### In re WALSHE.

(Circuit Court, D. Indiana. November 2, 1903.)

No. 10,250.

1 EXTRADITION — TREATY WITH GREAT BRITAIN — PLACE OF PRELIMINARY HEARING.

The extradition treaty between Great Britain and the United States, and Rev. St. § 5270 [U. S. Comp. St. 1901, p. 3591], enacted to carry into effect the provisions of extradition treaties, do not vest a commissioner with power to issue a warrant upon which the accused may lawfully be arrested in another state and returned for examination before such commissioner. To authorize the extradition of a person under such treaty the charge must be one which would constitute an offense under the laws of the place where he is found, and the evidence such as would justify his apprehension and commitment for trial if the offense had been there committed; and, since the treaty recognizes the dual nature of our government, and the laws governing the offense may be either national or local, it is clearly contemplated that the hearing shall be within the state, district, or territory where the accused is found.

Habeas Corpus. On exceptions to marshal's return to writ.

Winter & Winter, A. C. Harris, Henry N. Spaan, and A. W. Wishard, for petitioner.

Jesse J. M. LaFollette, for respondent.

BAKER, Circuit Judge (orally). On the petition of Thomas Walshe a writ of habeas corpus was issued in this case, and the return of the marshal justifies the detention of the petitioner by virtue of a writ issued by United States Commissioner Shields in the Southern District of New York, addressed to any marshal of the United States, and commanding him to arrest and bring before the commissioner for hearing one James Lynchehaun, as a person who had been convicted in Ireland of the offense of assault with intent to kill, and who had escaped with the sentence unexecuted.

The exceptions of the petitioner challenge the legality of this writ, which was the only justification set up in the return.

Passing over those objections that go to the formality of the writ, and the questions presented as to the scope that this hearing on habeas corpus might take, I come to the one question that seems to me controlling, and that is the power of the commissioner in the Southern District of New York to issue a warrant upon which the marshal of this district may lawfully arrest the accused and return him

to the court of the commissioner in New York. The solution of that question depends upon the terms of the existing treaties between this country and Great Britain and the statute of the United States enacted to carry the provisions of such treaties into effect. If a construction of the statute and treaties had been given by the Supreme Court of the United States to the effect that a commissioner of one district may lawfully cause the arrest of an accused person at any place he may be found within the sovereignty of the United States, I would be constrained to follow such an interpretation. No decision of the Supreme Court to that effect has been cited, and my own examination of the authorities has failed to disclose one. Certain decisions in courts of the United States have been referred to. In the Henrich Case, in 5 Blatchf. 414, 11 Fed. Cas. p. 1143, arising under the treaty of June 16, 1852, with Prussia, the language of article 1 thereof being identical with article 10 of the treaty of 1842 with Great Britain, it was expressly decided that a warrant issued and returnable in New York was legally served in the state of Wisconsin, and that the return of the accused person from Wisconsin to New York for the purpose of the extradition hearing was warranted by the treaty and statutes.

In the case of Re Fergus (C. C.) 30 Fed. 607, the Henrich Case is referred to, but the question was not in any way involved in the case, and it does not appear that the court in that instance made an independent examination of the treaties and statutes for the purpose of forming and announcing a judgment of his own. The citation of the Henrich Case in the Fergus Case is simply a passing allusion.

The case of In re Baruch (C. C.) 41 Fed. 472, is also referred to, but in that case the question was not raised and decided, nor was the matter contained in the dictum in the view of the decision of the Henrich Case. The Baruch Case simply shows that the prisoner was brought forcibly from New Jersey to New York, and was discharged in New York because the showing against him was not sufficient. The case exhibits circumstances under which the question now presented might have been raised, but it was not.

In Grin v. Shine, 187 U. S. 181, 23 Sup. Ct. 98, 47 L. Ed. 130, the Henrich Case is referred to on page 187, 187 U. S., and page 101, 23 Sup. Ct. The observation is made that the Henrich Case was vigorously contested because the warrant was executed without the limits · of the District of New York and within the state of Wisconsin. There is no expression of opinion on the question whether the execution of the warrant in Wisconsin was lawful.

So that, as a matter of authority, the only case that has been presented, or that I can find, in which the question now presented is decided, is the Henrich Case. It is my duty to give to the decisions of the federal courts in other circuits the weight and consideration to which they are entitled in view of the ability and learning of the judges who decided them; but they are not binding in this circuit as authorities and precedents, and finally are entitled to only such consideration as the reasoning of the case justifies. In the Henrich Case I do not find any consideration given to some features of the treaty and statute that are controlling with me at this hearing, and

therefore, as a matter of authority and precedent, I find myself compelled to be actuated solely by my own judgment as to the scope of the treaties and statute.

In article 10 of the treaty of 1842 it was provided that the United States and the king of Great Britain, upon mutual requisitions, should deliver up to justice all persons who, being charged with certain specified crimes, should seek an asylum or should be found within the territories of the other, provided that this shall be done only upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed. The petitioner in this case is charged with being an escaped convict. So far as the issues to be tried before the examining magistrate that may arise upon the sufficiency of the record of conviction to be presented by the demanding government are concerned, and so far as the determination of the issue made by the petitioner's denial that he is the person who was convicted is concerned, it is very clear to me that those issues would be controlled by article 10 of the treaty of 1842, in connection with section 5270 of the statutes relating to extradition.

In the recent case of Wright v. Henker, 23 S. C. 781, 47 L. Ed. 948, it is very clearly determined that the representatives of the two governments in making the treaties of 1842 and 1889 had respect to the dual form of the government of the United States. Of course, the treaty-making power is with the national end of our duality, but it was competent for the national government to make the test of the existence of extraditable crimes, and to make the test of the definition of the crime depend upon the state law; and in the treaty, as the words of the treaty themselves clearly indicate, the test of the right of the British government to demand the return of an accused person was made to rest upon the law of the place where he was found, that place being determinable by the lines of the states, districts, and territories that make up the United States; and I have no doubt that such is the situation with respect to the provinces and colonies of Great Britain, because the contracting parties referred to an accused person "who shall seek an asylum or who shall be found within the territories of the other," and that the return could only be had upon evidence sufficient, according to the laws of the place where the person shall be found, to justify his commitment if the offense had been committed there. And in section 5270, Rev. St. [U. S. Comp. St. 1901, p. 3591], enacted to carry the provisions of extradition treaties into effect, the magistrate referred to may, upon complaint made under oath charging any person found within the limits of any state, district, or territory with having committed within the jurisdiction of the foreign government an extraditable crime, issue his warrant, etc. So that it is absolutely clear to my mind that the one nation was not dealing with the other merely as a national entity. It was in that capacity only that they could execute the treaty, but each had regard to the situation of the other, and on the part of the British government the dual character of our institutions was very clearly recognized. We have no common-law crimes in this

country. The penal code enacted by Congress is very limited. The great bulk of the crimes that are defined by the statutes are found in the penal codes of the states alone; and so, if an accused person is found in Indiana, and his return to Great Britain is demanded, the right of extradition stands upon whether or not the offense with which he is charged is an offense under the laws of Indiana. That is the substance of it, for it is made a condition upon which the return may be had that the evidence of criminality shall be determined according to the law of the place where the person is found, and shall be such as would justify his commitment for trial if the crime or offense had there been committed. Article 10 of treaty of 1842.

If an offense is committed in Indiana, of course it is contemplated by the law of Indiana that the preliminary hearing and the commitment for trial shall be in Indiana. Neither of the treaties nor the statute says in so many words that the hearing shall be had in the place where the accused party is found, but, inasmuch as the laws of the place where he is found, not only with respect to the substantial definition of the crime, but also with respect to the competency of witnesses and the admissibility of evidence, are made controlling, it was also intended that the hearing should be had at the place where he was found, particularly in view of the reference to the fact that the return is only justified under those circumstances that would warrant his commitment if the offense was committed in the jurisdiction where he was found. Of course, if an offense is committed there, his preliminary hearing must be had in that jurisdiction.

Now, returning to the Henrich Case, I observe that the court thought it sufficient ground upon which to decide that the warrant was one that runs throughout the United States to note the fact that the extradition is arranged for by treaty between the two countries in their national capacities. Of course, that is necessarily so. The treaty-making power is lodged in the national part of our institutions. But because the United States, as a national entity, alone has authority to make the treaty, it does not follow that the basis of returning people who are demanded under an extradition treaty is to be the national law, or under the national definition of crime. No attention was paid in the Henrich Case to the fact, which has been thoroughly established by the courts, that the operative basis of extradition treaties is the law of the place where the accused person is found.

Now, while it is true that the court in New York may decide the questions according to the law of Indiana—and therefore the decision of Wright v. Henkel is not conclusive upon the question now before the court—yet, inasmuch as it would be necessary to have a person committed in Indiana for an offense in Indiana, before a magistrate of Indiana, I shall hold, until controlled by explicit legislation, or until the Supreme Court shall by definite construction declare that the makers of the treaty intended that an accused person presumably innocent could be taken from Alaska to New York for the purposes of a preliminary hearing, or that an American citizen presumably innocent could be taken from Australia to London for the purpose of a hearing, that no such intention was within the view of the makers

of this treaty, and that they intended that, when the basis of the extraditability of the crime was made the law of the place where he was found, the hearing would be had there, similarly to the hearing where he would be committed for trial if the offense had been committed in the place where he was found.

So I will sustain the exceptions of the petitioner to the return of the marshal, and, as counsel for the British government have indicated that they do not desire to amend, the petitioner may be discharged.