I shall, therefore, advise the jury to acquit the defendant.

---

## United States Circuit Court—Southern District of New York.

### June, 1889.

### IN THE MATTER OF REINITZ.

#### EXTRADITION—HABEAS CORPUS.

Where a petition in the United States courts presents facts sufficient to raise an inquiry as to whether the prisoner is in custody in violation of the Constitution or of a law or treaty of the United States, habeas corpus from the United States courts is an

Statement of Facts.

appropriate remedy, although the prisoner be held under process of the State courts.

When persons are in custody under process of the State courts and the same remedies exist there as in the United States courts, although it may be sometimes more appropriate to refer the applicants for relief to the State tribunals, yet in a matter involving personal liberty, and where the proceeding in the State courts may involve considerable delay to the prisoner, he is entitled to the more expeditious remedy of the United States tribunals.

The surrender of a prisoner under an extradition treaty is to be deemed a surrender for that particular purpose only, with the implication that he is not to be restrained of his liberty for any other cause than that for which he is extradited.

Therefore a prisoner extradited upon the demand of the United States government and brought within a State under such extradition proceedings, cannot be held in custody for any other cause than that for which he was extradited, and especially he cannot be arrested on process against his person obtained in a civil action in a State court, unless he has had a reasonable time, after being set at liberty, for the purpose of returning to the country from which he was taken.*

Writ of habeas corpus and certiorari obtained by Ignatz Reinitz.

The prisoner, upon the demand of the United States Government, was extradited from Queenstown, Ireland, in April, 1889, under the treaty of 1842, upon a charge of forgery. He was tried upon that charge in New York City in the Court of General Sessions and jury, and was acquitted, by direction of the court, on June 19. (See *ante*, p. 71).

Within a few minutes thereafter, as he was leaving the Court-House, he was arrested by the sheriff of the county upon an order of arrest granted by the Supreme Court on April 22 in a civil action for the recovery of $4,220.90, moneys of the plaintiff alleged to have been wrongfully converted by the prisoner to his own use. Writs of habeas

---

* Overruling, in the United States courts, Adriance *v.* Lagrave, 59 *N. Y.* 110.—ED.

corpus and certiorari from the United States Circuit Court were thereupon obtained under section 752 of the Revised Statutes.

Upon the returns made to the writs by the sheriff, including copies of all the papers in the civil action, there was no controversy as to the facts, and the only question was whether the prisoner after his acquittal was liable to arrest before the expiration of a reasonable time for his return to Ireland, from whence he was extradited.

*Benno Loewy*, for relator.

*Solomon, Dulon & Sutro*, for respondent.

Brown, J.—[After stating the facts as above.]—A preliminary objection is made that this court has no jurisdiction to issue a writ of habeas corpus in such a case. But sections 752 and 753 of the United States Revised Statutes provide for writs of habeas corpus to inquire into the "cause of restraint of liberty" where the prisoner is "in custody in violation of the Constitution, or of a law or treaty of the United States." The petition presents facts sufficient to raise an inquiry upon that subject, and if a case under that clause of section 753 is made out, habeas corpus from the Federal courts is an appropriate remedy, though the prisoner be held under process of the States courts. *Ex parte* Royall, 117 *U. S.* 241; United States *v.* Rauscher, 119 *U. S.* 407, 431; Wildenhus's Case, 120 *U. S.* 1. The preliminary objection, therefore, presents no different question from that on the merits of the application.

Until the decision in the case of Rauscher, *supra*, in December, 1886, wide differences of opinion had prevailed in both the Federal and State courts whether a prisoner extradited under a treaty for one offense could be tried for another. The Supreme Court, in the case of Rauscher, upon full consideration and a review of the leading authorities, has definitely settled that question, holding that an extradited prisoner cannot be arrested or tried for any offense except that for which he was extradited until the termina-

tion of the extradition proceedings and the lapse of a reasonable time thereafter to enable him to return to the country from which he was brought.

The case of Rauscher, however, like all the other reported cases on this subject, was a case of arrest and trial on a criminal charge. The only reported case to which I have been referred of a prisoner extradited from a foreign country and arrested in a civil suit is that of Adriance *v*. Lagrave (1 *Hun*, 689 ; S. C., 59 *N. Y.* 110), which arose in 1874, and does not essentially differ from the present case. The order of arrest was there set aside in the General Term, but was upheld in the Court of Appeals. The Supreme Court in the case of Rauscher referred to the Lagrave case, and while alluding to the difference between an arrest on a criminal charge and an arrest in a civil suit incidental to the collection of a debt, withheld any expression of opinion as to the legality of an arrest in a civil suit under such circumstances. The question to be now determined is whether there is any difference in the principles applicable that should lead to a different result.

The main difference of opinion has been as to the construction to be put upon extradition treaties ; and whether the surrender of the prisoner is to be deemed a surrender for a particular purpose only, with the implication that he is not to be restrained of his liberty for any other cause, or whether the surrender, when made upon compliance with the preliminary conditions of the treaty, becomes an absolute surrender and without any such implied limitation. The latter was the view of a majority of the Court of Appeals in the case of Lagrave, while the opposite view was maintained at the General Term.

The decision of the Court of Appeals, however, was not based upon any grounds peculiar to an arrest in a civil suit, but upon grounds applicable alike to a civil and criminal arrest, without distinction. As those grounds are disapproved by the Supreme Court in the case of Rauscher, and the right of criminal arrest denied, the Lagrave case, as an

authority for a civil arrest, fails also. The opinion in the Supreme Court, treating the subject in the broadest manner, upholds in its general scope the views of DANIELS, J., at the General Term in the Lagrave case, and it reinforces them by its construction of sections 5270, 5272 and 5275 of the Revised Statutes, which are declared to be supplementary to the extradition treaties, and to enforce their implied limitations. The right of asylum is a principle of public law, recognized by all sovereignties. No concession by a surrender of a prisoner in abridgment of this right is made, except for grave offenses under careful restrictions that exclude minor misdemeanors, most political offenses, and, much more, mere claims for the collection of debts. Though the implied restrictions of the treaty are for the most part spoken of by the Supreme Court in reference to a criminal arrest, since that was the question before the court, yet there are many passages in the opinion that in principle embrace equally arrests in civil suits. At page 420 it is said : " It is therefore very clear that . . . it was not intended that the treaty should be used for *any other purpose* than to secure the trial of the person extradited for one of the offenses enumerated in the treaty."

Again, at page 422: "As the right of transfer, the right to demand it, the obligation to grant it, the proceedings under which it takes place, all show that it is for a limited and defined purpose that the transfer is made, it is impossible to conceive of the exercise of jurisdiction in such a case for *any other purpose* than that mentioned in the treaty, and ascertained by the proceedings under which the party is extradited, without an implication of fraud upon the rights of the party extradited, and of bad faith to the country which permitted his extradition."

A civil arrest is clearly as incompatible with such limitations as an arrest on a criminal offense.

So just in principle are such limitations that the Court of Appeals in the Lagrave case declared that the provisions for protection against lawless violence under section 5275,

U. S. Rev. Stat., "ought [by legislation] to be extended to protection from other prosecutions or detentions." But that section, as construed by the Supreme Court, does extend to protection from other prosecutions. It declares that "the President shall have power to take all necessary measures for the transportation and safe keeping of such accused person, and for security against lawless violence, until the final conclusion of his trial for the crimes or offenses specified in the warrant of extradition, and until his final discharge from custody or imprisonment for or on account of such crimes or offenses, *and for a reasonable time thereafter*, and may employ such portion of the land or naval forces of the United States, or of the militia thereof, as may be necessary *for the safe-keeping and protection of the accused*." The language of the section includes not merely "security against lawless violence," but, in addition thereto, "the safe-keeping and protection" of the accused until his acquittal, or, if convicted, until he has served out his sentence, and for a *reasonable time thereafter*. Reasonable time for what? "Obviously," says the Supreme Court, "until he shall have a reasonable time to *return unmolested* to the country from which he was brought." Mr. Justice GRAY concurred in the judgment of the court solely upon that construction of the statute.

No reasons are perceived why the limitations of the treaty and the provisions of the statute, as thus construed, are not as applicable to a civil arrest as to a criminal one. The prisoner may, indeed, give bail in a civil action. But so might he in all those minor criminal offenses for which he could not be extradited, and upon which no arrest is permitted. If he could not procure bail on the civil arrest, or pay the final judgment, he might, indeed, be discharged under the State practice after a certain term of imprisonment; but that term might be as long as the sentence allowed on conviction for many of the minor crimes.

It may be said that the implication of extradition treaties has reference to crimes only; and that neither of the

contracting governments can be supposed to have concerned itself about the mode of collecting private debts, or about any arrest of a prisoner that might be incidental to civil suit. But this is hypothesis only, and an examination of some of the more recent treaties shows the contrary. Thus the treaty of 1872 between England and Germany, article 11, provides that "a person surrendered can in no case be kept in prison . . . for any other crime, or *on account of any other matters* than those for which the extradition shall have taken place." *Clarke, Extradition,* App., cv.

It is certain that no government surrenders a person for the purposes of arrest in a civil action ; and such an arrest is as much an infringement of personal liberty and a diversion from the object of the treaty as an arrest for crime ; and there is the less justification for the former, since the courts of all civilized countries are alike open for the prosecution of money demands, while crimes can be punished only within the jurisdiction where committed.

The main question must be as to the presumed intention of the treaty itself, and of the Act of Congress supplementary to it. If these intend only the surrender of the prisoner for the limited purpose of a trial for the extradition offense, and if by express enactment and the implications of good faith they guarantee him protection for a reasonable time thereafter to enable him " to return unmolested" to the country from which he was brought, as the Supreme Court declares, a civil arrest must be as unlawful as a criminal one.

Section 5275, moreover, makes no distinction between a civil and a criminal arrest, against which the accused may require protection for a reasonable time to enable him to return. The demands of public justice, on elementary principles, are superior to claims for the satisfaction of private debts. If, therefore, the demands of the State must give way to the prisoner's right of return, much more, it would seem, must the right of private arrest.

There are numerous cases holding that a person brought

within the jurisdiction by violence or fraud is amenable to prosecution at the instance of persons not privy to the wrong. Ker *v.* Illinois, 119 *U. S.* 436; Mahone *v.* Justice, 127 *Id.* 700.*

These cases all proceed upon the ground that the defendant is not himself clothed with any immunity or right of protection, by the mere fact that third persons have done him violence or injury in bringing him within the jurisdiction. He has his private remedy for that wrong. Hence, though the person guilty of the wrong can not profit by it in any suit of his own, this furnishes no defense against public justice, or against private suitors, who are in no way responsible therefor. But this principle can not apply where the prisoner is himself clothed with a legal right or immunity. And in the case of Rauscher, the Supreme Court declared that the prisoner is clothed with such an immunity. At page 422 it is said that "it is impossible to conceive of the exercise of jurisdiction for any other purpose than that mentioned in the treaty without an implication of fraud *upon the rights* of the party extradited." Again, as respects the prisoner's right of return, it is said (p. 424) that section 5275 " is conclusive upon the judiciary of the *right conferred upon persons* brought from a foreign country into this under such a treaty." At page 430, also, the court again speak of a reasonable time to return as a " right of the prisoner under such circumstances." · In Ker *v.* Illinois (119 *U. S.* 443), also, the court say that the prisoner "came to this country *clothed* with the protection which the nature of such proceedings and the true construction of the treaty gave him. *One of the rights* with which he was thus clothed was that he should be tried for no other offense," &c.

If the opportunity to return is a " right conferred" upon the prisoner, and a duty owed to the extraditing Govern-

---

* See the opinion of Gov. Hill in the Matter of Brown, 4 *N. Y. Crim.* 476.—ED.

ment, it is manifest they are infringed by a civil arrest as much as by a criminal one. The good faith of third persons who prosecute the prisoner becomes immaterial. See LOWELL, J., on Winslow's case, 10 *Am. Law Rev.* 620.

Finally, the language used by the various publicists and text-writers referred to with approval by the Supreme Court in the Rauscher case forbids an arrest in one form of proceeding as much as in the other. Mr. William Beach Lawrence says that the prisoner is entitled, unless found guilty of the offense for which he is extradited, to be restored in safety to the country of his asylum at the time of his extradition. Judge COOLEY declares that " the prisoner has a right to have the particular offense disposed of, and then to depart in peace." And Mr. Spear considers it " the duty of courts to secure to him, as against all attempts at legal interference therewith, a reasonable opportunity to exercise this right." *Spear on Extradition,* 2d Ed. 557, 131–145.

I must hold, therefore, upon the principles and authorities approved by the Supreme Court in the case of Rauscher, that the prisoner, at the time of his arrest, not having had a reasonable time to return to Ireland after his acquittal, was under the protection of the United States, and not subject to arrest in the State or Federal courts for any cause arising prior to his extradition, and that the State court, when the prisoner was arrested by the sheriff, " did not have jurisdiction of the prisoner at that time, so as to subject him thereto " (p. 433). When persons are in custody under process of the State courts, and the same remedies exist there, although it may sometimes be more appropriate ro refer the applicants for relief to the State tribunals (*Ex parte* Royall, 117 *U. S.* 251 ; *Ex parte* Coy, 32 *Fed. Rep.* 911), yet in a matter involving personal liberty, and considering the several successive appeals to which the petitioner might be subjected in the State courts, I think the prisoner is entitled to the more expeditious remedy of the Federal tribunals.

The prisoner is accordingly discharged, and the court fixes a week after his release by the sheriff as a reasonable time under the statute during which he is entitled to exemption from arrest for the purpose of returning to Ireland.

NOTE ON INTERSTATE EXTRADITION.

In Kansas an alleged fugitive from justice extradited from one State to another can be prosecuted only for the offense for which he was extradited, until after he has had a reasonable time and opportunity afforded him to return to the jurisdiction from which he was extradited. State *v.* Hall, (Supreme Court of Kansas, December, 1888), 19 *Pac. Rep.* 918.

In Indiana, where a prisoner is brought into the State upon a requisition, stating that he was charged with embezzling money, he may be tried on an indictment charging in one count the embezzlement of property, the same property being involved in each case. Waterman *v.* State (Ind.), 18 *N. E. Rep.* 63.