## *In re* BARUCH.

(*Circuit Court, S. D. New York.* January 4, 1890.)

INTERNATIONAL EXTRADITION—DISCHARGE OF PRISONER—ARREST IN OTHER PROCEED-
INGS.

    Upon a warrant issued by a commissioner of this court, the prisoner was brought here by the marshal from the state of New Jersey, for examination in a proceeding to extradite him to Austria, upon a charge of embezzlement of public funds. The charge not being sustained, the commissioner discharged the prisoner, and the latter, upon leaving the commissioner's room, was arrested by the sheriff upon an order of arrest in a civil suit in the state court to recover the same funds. Both proceedings were promoted and prosecuted by the same agents and attorneys. *Held,* that the case fell within the general principles decided in the case of *U. S. v. Rauscher,* 119 U. S. 407, 7 Sup. Ct. Rep. 234, and that of *In re Reinitz,* 39 Fed. Rep. 204; and that the prisoner was entitled to immunity from arrest until the lapse of a reasonable time to return to New Jersey, whence he had been brought, and one day was allowed for that purpose. *Held, further,* that in such cases, to prevent conflicts of jurisdiction, it was competent for the commissioner to direct the marshal to take the prisoner to the place whence he had been brought, and that he be thereupon discharged.

*Habeas Corpus* and *Certiorari.*

*B. Loewy,* for petitioner.

*Solomon, Dulon & Sutro,* for opposing creditor.

BROWN, J. On September 21, 1889, the prisoner was arrested in the state of New Jersey by a deputy of the United States marshal of this city, upon a warrant issued by a commissioner of this court, upon the petition of the Austro-Hungarian consul, for the purpose of procuring the extradition of the prisoner from this country to Austria, under the treaty between the two governments, upon a charge of embezzlement of the public funds of the Austro-Hungarian empire. The prisoner was brought to this state, and, during the pendency of the extradition proceedings before the commissioner, he was imprisoned in Ludlow-Street jail. On the 8th of September following, it appearing that the charge of embezzlement could not be sustained, the extradition proceedings were discontinued, and the prisoner discharged by the commissioner. Upon going out of the door of the commissioner's room, he was arrested by the sheriff of the city and county of New York, upon an order of arrest issued in a civil suit in the supreme court of this state, brought on behalf of Daniel Baruch, the prisoner's brother, on account of the alleged conversion of the same funds which the extradition proceedings alleged to have been embezzled. The civil suit was also prosecuted through the Austrian consul, as the agent of Daniel Baruch. The same attorneys acted in both proceedings, and the papers for the arrest of the prisoner in the civil suit were prepared during the few days prior to the discontinuance of the extradition proceedings. The prisoner is now brought before this court upon *habeas corpus* and *certiorari,* and his discharge is asked on the ground that his arrest in a civil suit was made before the lapse of any opportunity to return to New Jersey, whence he had been brought on the warrant in the extradition proceedings. The case is in some respects different from that of *In re Reinitz,* 39 Fed. Rep. 204, re-

cently decided by this court. There, the prisoner, having been extradited to this country, and on trial acquitted, was immediately arrested in an action of debt, but was discharged on *habeas corpus*, and given a reasonable time to return to Ireland, from whence he came. The principles declared by the supreme court in the case of *U. S.* v. *Rauscher*, 119 U. S. 407, 7 Sup. Ct. Rep. 234, which adjudged a subsequent immediate arrest for crime illegal, were there held equally applicable to a subsequent arrest in a civil suit for debt. In the present case the prisoner was not delivered to this country by a foreign government, but was apprehended and held in custody by this government, for the purpose of being delivered to Austria, in accordance with the treaty stipulations, provided, upon the preliminary hearing, a *prima facie* case should be established.

Though some of the arguments and considerations that support the decisions in the cases above cited do not apply to the present case, the fundamental principle which was laid down as the basis of the decision in the *Rauscher Case* seems to me to be equally applicable here. That principle is that the proceeding under the treaty is for a limited and defined purpose only, and that the exercise of jurisdiction over the prisoner for any other purpose than that mentioned in the treaty, until he has an opportunity to return, is a fraud upon the rights of the party extradited, and bad faith to the country which permitted the extradition. 119 U. S. 422, 7 Sup. Ct. Rep. 242. Upon this general principle, in the very recent *Case of Hope*, who had been brought from California upon the requisition of the governor of this state, upon interstate extradition proceedings, and who, after conviction, and after serving out his sentence, was again immediately arrested upon a requisition of the governor of Delaware to the governor of this state for trial for an offense committed in Delaware, the prisoner was discharged upon *habeas corpus* before Wheeler, J.,[1] in this court; and Gov. Hill, after argument, upon the same ground refused the warrant for removal, until after the lapse of a reasonable time for the accused to return to California, whence he had been brought to this state. 40 Alb. Law J. 441. The present case, as it seems to me, cannot be distinguished or excepted from this general principle. If the extradition proceeding and the presence and custody of the prisoner here are for the single-named purpose only; and if the exercise of any other jurisdiction over him, before he has a reasonable time to return, is a perversion of the treaty and the law, and a fraud upon the rights of the accused,—it is manifestly immaterial at what stage of the extradition proceedings, or in what place in the course of those proceedings, such a perversion or interference with the rights of the prisoner takes place. The same principles must apply to the whole proceedings, —the same in the earlier stages as in the final. Here the prisoner was brought from another state before a commissioner of this court upon an extradition proceeding, and for the purposes of a preliminary trial only. On this preliminary trial he was discharged. Any interference with the

[1]No opinion filed.

right of return, within a reasonable time, to the place from which the prisoner had been taken under the federal authority, is as much a malappropriation of the extradition proceeding, and a perversion of its purpose, as if the arrest were after a discharge under final trial.  The case is not, indeed, within the letter of section 5275, Rev. St. U. S., since that section applies only to prisoners delivered by foreign countries to this country; but that section does give statutory sanction in that class of cases to the general principle made applicable by the supreme court to extradition proceedings in general; and, as above stated, the same general principle is applied to cases of interstate extradition, although there is no statutory provision covering this point.  As the prisoner was therefore brought here involuntarily from New Jersey by force of the federal law, under treaty provisions, and for no other purpose than an examination under the treaty and the federal law, common justice demands that he be treated as under the protection of that same federal law until the lapse of a reasonable time for his return after his discharge.  During this period, his enforced presence under a federal law for treaty purposes, and for this special purpose only, is a presence which no other persons have a right to take advantage of; nor, under the law and the treaty that wrongfully forced him here, should he be allowed to suffer disadvantage, until, by voluntarily remaining, he waives the privilege and protection to which he is entitled until he has opportunity to return.  The court which granted the order of the arrest might, perhaps, properly enough refuse to vacate such an order; for, after the lapse of a reasonable time, if the defendant were found here, he might be rightfully arrested under it; but until time to return is allowed, the execution of such an order of arrest is premature.

Any uncertainty in the application of this rule, as well as questions of conflict of jurisdiction, would be avoided if the commissioner in such cases, instead of directing an immediate discharge from custody, should direct the marshal, as he may direct him, to return the prisoner to the jurisdiction whence he was brought, and that the prisoner be thereupon discharged.

The prisoner will accordingly be discharged from the custody of the sheriff; but, in order that he also may take no advantage of his presence here, the order entered may direct, if the opposing creditor desires, that the prisoner, upon his discharge by the sheriff, be taken by the marshal upon the same day to the state of New Jersey; otherwise, the prisoner, when discharged by the sheriff, will be allowed the remainder of the day as a reasonable time for his return to New Jersey.