**UNITED STATES ex rel. FITLEBERG v. McCANDLESS, Commissioner of Immigration.**

**No. 4447.**

Circuit Court of Appeals, Third Circuit.

March 11, 1931.

Adrian Bonnelly, of Philadelphia, Pa., for appellant.

Isador Worth, of Riverside, N. J., for appellee.

Before DAVIS, Circuit Judge, and JOHNSON and THOMPSON, District Judges.

THOMPSON, Circuit Judge (sworn in as Circuit Judge February 3, 1931).

This is an appeal by Jacob Fitleberg, relator appellant, from the decree of the United States District Court for the District of New Jersey, upon habeas corpus proceedings, remanding him to the custody of the immigration authorities for deportation to England.

The facts, as shown by the record, are as follows:

The appellant was born in 1901 at Liverpool, England, of parents born in Germany. His father went to Canada to reside prior to 1912 or 1913, when the appellant went with his mother by the steamship Laurentic from England to Quebec, Canada. He lived with his parents in Montreal and remained there until 1923. In that year he went from Windsor, Ontario, to Detroit, Mich., falsely representing to the immigration authorities that he was going to remain in the United States for a day or two. He remained five or six months and then returned to Canada. In November, 1924, he again crossed the border from Windsor to Detroit, remained there six months, and then returned to Canada, where he remained for ten months. In February, 1926, he returned to the United States, remained until June, 1926, and then went back to Montreal. In December, 1926, he again crossed to Detroit. He did not pay a head tax at any time when he entered the United States, and knew that he was in this country unlawfully.

In March, 1927, he was arrested in Detroit and extradited to Windsor, Canada, to answer a criminal charge of obtaining money under false pretense at Montreal. While under arrest at Windsor, upon examination by the Canadian immigration authorities, he falsely stated that he was married, that he was born in Philadelphia, and that his name was Jimmy Wilson. He was taken to Montreal, and in June, 1927, was acquitted of the criminal charge. He was deported from Canada to the United States and delivered by the Canadian immigration officers to the immigration of-

ficers of the United States and taken into custody by them at Rouses Point, N. Y., on September 23, 1927. On September 26, a hearing was had·at which the foregoing facts were developed, and it was also developed that he was afflicted with a dangerous and loathsome contagious disease. He was not in possession of an unexpired visa, and was never legally admitted to the United States.

The appellant claimed at the hearings before the immigration authorities that he had become a citizen of Canada through the naturalization there of his father. But beyond his statement there has been no documentary or other evidence to sustain that claim. The Canadian authorities have absolutely refused to permit his return to Canada, upon the ground that he has no legal status there, he having been born in Liverpool, England. Consent to his deportation to England was granted through the British Embassy at Washington. The Secretary of Labor, having found from the proofs that the appellant was found in the United States in violation of the Immigration Act of February 5, 1917, issued a warrant for his deportation to England. The appellant thereupon obtained a writ of habeas corpus, and, upon hearing, the District Judge dismissed the writ and ordered the relator remanded to the immigration authorities for deportation to England.

The question involved is thus stated in the brief for the appellant: "The relator-appellant having been brought from Canada to the United States contrary to his will, it cannot be sustained that he was found in the United States in violation of the United States immigration laws, and a warrant of deportation to England is therefore void."

In view of the facts established by the appellant's own testimony, we fail to find any merit in the contention thus expressed. The appellant voluntarily entered the United States from time to time unlawfully. He was unlawfully here when he was arrested and taken to Canada for trial upon the criminal charge. · By returning him to this country, the Canadian officials put him back into the same status he occupied prior to his extradition. His first entry and each succeeding entry into the United States was unlawful. Upon his being returned to this country at Rouses Point, he was found afflicted with the disease which justifies his deportation. His status as a resident had been obtained by fraud and falsehood, and was the same upon his being returned by the Canadian authorities as prior to his arrest for trial in Montreal.

Section 20 of the Act of February 5, 1917, (39 Stat. 874, 890, U. S. Code, title 8, § 156 [8 USCA § 156]), provides as follows: "The deportation of aliens provided for in this subchapter shall, at the option of the Secretary of Labor, be to the country whence they came or to the foreign port at which such aliens embarked for the United States; or, if such embarkation was for foreign contiguous territory, to the foreign port at which they embarked for such territory; or, if such aliens entered foreign contiguous territory from the United States and later entered the United States, or if such aliens are held by the country from which they entered the United States not to be subjects or citizens of such country, and such country refuses to permit their reentry, or imposes any condition upon permitting reentry, then to the country of which such aliens are subjects or citizens, or to the country in which they resided prior to entering the country from which they entered the United States."

The Canadian government held the alien to have no legal status in Canada, and refused to receive him. The Secretary of Labor first ordered him deported to Canada, and directed his return to England only after Canada refused to receive him. The right of the Secretary to deport aliens to the country of nativity or citizenship rather than to the country· from which the .aliens last entered the United States is unquestioned. Johnson v. Weedin (C. C. A.) 16 F.(2d) 105; U. S. ex rel. Di Battista v. Hughes (C. C. A.) 299 F. 99; Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967; Karamian v. Curran (C. C. A.) 16 F.(2d) 958.

Finding no error in the record, the decree of the District Court is affirmed.