**BLUMEN v. HAFF.**
No. 7542.

Circuit Court of Appeals, Ninth Circuit.
Aug. 12, 1935.

Stephen M. White, of San Francisco, Cal., for appellants.

H. H. McPike, U. S. Atty., Robert L. McWilliams, Asst. U. S. Atty., and Arthur J. Phelan, U. S. Immigration and Naturalization Service, all of San Francisco, Cal., for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

WILBUR, Circuit Judge.

The appellants are in the custody of the appellee, Edward L. Haff, District Director of Immigration and Naturalization for the Port of San Francisco, under warrants of deportation directing their deportation to Poland. Appellants applied to the District Court for writ of habeas corpus. The appellee was ordered to show cause why such a writ should not issue, and, after hearing, the application was denied and the petition dismissed. The records relating to the order of deportation are set out as exhibits to the petition for the writ, and also to the return to the order to show cause.

The petitioners are brothers. They were born at Weynitz, Roumania. At the time of their birth this territory was in the Empire of Austria. It has since been transferred to Roumania. Julius Blumen came from Germany and entered the United States in 1923, where he resided until January, 1924, when he departed for France, remaining there until March or April, 1924, when he returned to the United States. Leopold Blumen first came to the

United States from France in April or May, 1924. Both petitioners resided in the United States until October, 1925, when they departed for England where they remained until August, 1926, when they were extradited to the United States to answer to the charge of grand larceny committed in San Francisco, Cal., between April, 1924, and October, 1925. Petitioners pleaded guilty to the charge and were sentenced to a term of imprisonment in the state penitentiary at San Quentin, Cal. They remained in prison from April 29, 1927, to June 19, 1933, at which time the term of imprisonment expired and they were released from the custody of the warden of the penitentiary and were immediately taken into custody by the United States Immigration authorities for deportation under the warrants of deportation above mentioned.

Each warrant of deportation states as a ground thereof that the petitioner therein named at the time of his entry on August 8, 1926, was a person likely to become a public charge, and that he had been convicted of or admits the commission of a felony or crime or misdemeanor involving moral turpitude, to wit, grand larceny, prior to his entry into the United States in August, 1926.

The first warrant issued by the Secretary of Labor February 16, 1931, directed the deportation of appellants to Roumania, but on March 23, 1931, the Roumanian authorities declined to issue passports or accept appellants for deportation to Roumania claiming that petitioners had forfeited their rights to be considered citizens of Roumania by accepting and using Polish passports. On March 27th the Secretary of Labor amended his warrant of deportation to provide for the deportation of appellants to Poland. On April 21, 1933, the warrants were amended to provide for deportation of appellants to England, but on May 15, 1933, the warrants for deportation to Poland were reinstated because of the refusal of the British authorities to accept appellants for deportation to England.

The appellants present five objections to the order of deportation, as follows:

"1. That they have not entered or been found in the United States within the meaning of the immigration laws and that, therefore, they are not subject to deportation proceedings.

"2. That they are not citizens or subjects of Poland and that, therefore, the Secretary of Labor had no authority to order their deportation to that country.

"3. That the immigration authorities, in taking them into custody immediately upon their release from prison, without affording them a reasonable time to depart, unmolested, from the United States, deprived them of a right guaranteed by treaty and statute.

"4. That they did not, within the meaning of the law, admit the commission of a crime, involving moral turpitude, prior to entry.

"5. That they were not persons likely to become public charges at the time of their entry."

■ The first contention is based upon the proposition that inasmuch as appellants reentered the United States in 1926 in the custody of an officer and involuntarily, they are not subject to deportation, but rather to exclusion proceedings, if any. In support of this contention appellants cite Nishimura Ekiu v. United States, 142 U. S. 651, 12 S. Ct. 336, 35 L. Ed. 1146; Kaplan v. Tod, 267 U. S. 228, 45 S. Ct. 257, 69 L. Ed. 585; U. S. ex rel. Valenti v. Karmuth (D. C.) 1 F. Supp. 370; Ex parte Chow Chok, 161 F. 627; Id., 163 F. 1021. It is unnecessary to analyze these cases. All deal with situations where there was an apprehension of the parties in connection with their attempt to enter the United States and so, although they were actually within the United States, it was held they had not entered within the meaning of the law and were subject to exclusion proceedings rather than deportation proceedings. In the case at bar the petitioners entered the country and were found therein. The decisions by the District Court in Gomes v. Tillinghast, 37 F.(2d) 935, and by the Circuit Court of Appeals for the Third Circuit in U. S. ex rel. Fitleberg v. McCandless, 47 F.(2d) 683, tend to support this view, although we think the proposition that appellants entered the United States at the time they were brought in in 1926 is too clear for discussion. See U. S. ex rel. Stapf v. Corsi, 287 U. S. 129, 53 S. Ct. 40, 77 L. Ed. 215; U. S. ex rel. Claussen v. Day, 279 U. S. 398, 49 S. Ct. 354, 73 L. Ed. 758.

■ Appellants' second contention that they are not citizens of Poland, and therefore cannot be ordered deported to that country, is based upon the proposition that the only evidence with relation to the citi-

zenship of appellants other than their Polish passports is the statement made by them at the time of their entry in 1926, namely, that they were born in the city of Weynitz, in the Empire of Austria, and that their parents were both natives of that country. This would, according to common law, make them citizens of Austria (U. S. v. Wong Kim Ark, 169 U. S. 649, 653, 18 S. Ct. 456, 42 L. Ed. 890), and upon the transfer of the territory in which they were born to Roumania by the Treaty of St. Germain they would become citizens of Roumania unless at that time they were absent from Roumania and elected to retain their Austrian citizenship (Boyd v. Nebraska, 143 U. S. 135, 162, 12 S. Ct. 375, 36 L. Ed. 103).

The appellee contends that inasmuch as the civil law and not·the common law obtains in Austria and Roumania, it cannot be assumed that by birth within the territory of Austria of parents who were also born in Austria the petitioners became citizens of Austria, for the reason that the civil law recognized the principle of jus sanguinis, that is, that citizenship is acquired by descent and not by place of birth.

■ The appellants contend that the Polish passports used by them in obtaining admission to the United States in 1924 are not competent evidence of citizenship and therefore that the order of deportation is erroneous. In support of this contention appellants cite Urtetiqui v. D'Arcy, 9 Pet. 692, 9 L. Ed. 276; Edsell v. D. Charlie Mark (C. C. A.) 179 F. 292; Miller v. Sinjen (C. C. A.) 289 F. 388. In all these cases the party whose citizenship was involved was attempting to prove his American citizenship by a passport issued to him by the Secretary of State. It was held that as against the government issuing the passport it was not evidence of the citizenship of the holder. Here the question is whether the fact can be shown that an alien who seeks entry into this country offered a Polish passport to establish his claim to enter and his nationality and allegiance. It is clear that his tender of such proof of his allegiance to the Polish government is a declaration or admission on his part that he is a subject of Poland. The fact that appellants were born in Austria is not necessarily inconsistent with Polish citizenship. No proof was made as to the law of Poland, Austria, or Roumania, or as to the question of citizenship except evidence of birth and parentage. In the absence of such proof the acts of the appellants in obtaining and presenting Polish passports for the purpose of entering the United States sustains the conclusion of the Secretary of Labor and her warrant.

■ With reference to the third contention that the petitioners have not been given a reasonable opportunity to depart from the United States unmolested, appellants rely upon cases in which after extradition and trial for the offense for which persons were extradited, an attempt has been made to punish them for an entirely different offense in the country to which they have been extradited. It is in this connection that the Supreme Court of the United States has held that the extradited person shall not be arrested or tried for any other offense than that with which he is charged in the extradition proceedings until he shall have had a reasonable time to return unmolested to the country from which he was brought. U. S. v. Rauscher, 119 U. S. 407, 7 S. Ct. 234, 30 L. Ed. 425. This applies also to an arrest upon a civil process. In re Reinitz (C. C.) 39 F. 204; In re Baruch, 41 F. 472. These decisions could have no application to proceedings the very purpose of which is to facilitate the exit of the petitioner from the United States. Inasmuch as he was extradited from England and that country has refused to receive him, the petitioners are not in a position to claim the right to their liberty in order that they may leave the country in their own way and in their own time. Gorcevich v. Zurbrick (C. C. A.) 48 F.(2d) 1054; U. S. ex rel. Karamian v. Curran (C. C. A.) 16 F.(2d) 958; Lazzaro v. Weedin (C. C. A.) 4 F.(2d) 704; Johnson v. Weedin (C. C. A.) 16·F.(2d) 105.

As we sustain the deportation upon other grounds, it is unnecessary to consider the contention that deportation could not be predicated upon the proposition that the appellants were liable to become public charges because under indictment for crime. The authorities on this question are in conflict and the appellee does not press the point. Coykendall v. Skrmetta (C. C. A.) 22 F.(2d) 120; Ng Fung Ho v. White (C. C. A.) 266 F. 765; U. S. ex rel. Iorio v. Day (C. C. A.) 34 F.(2d) 920; U. S. ex rel. Medich v. Burmaster (C. C. A.) 24 F.(2d) 57, 59.

The next contention is that the appellants did not admit the commission of a crime involving moral turpitude prior to entry. The claim is that the plea of guilty was not an admission of the crime. In that regard ·counsel cites an excerpt from an opinion of the Supreme Court in Kercheval v. U. S., 274 U. S. 220, 47 S. Ct. 582, 583, 71 L. Ed. 1009, where it is said: "A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction." We think it clear that a plea of guilty is a confession of guilt within the meaning of the immigration laws. It is an admission under the most solemn circumstances, a judicial confession.

Furthermore, as they were convicted of an offense committed before their last entry, they were subject to deportation for that reason. U. S. ex rel. Karpay v. Uhl (C. C. A.) 70 F.(2d) 792, and U. S. ex rel. Rosen v. Williams (C. C. A.) 200 F. 538, 541; U. S. ex rel. Volpe v. Smith, 289 U. S. 422, 53 S. Ct. 665, 77 L. Ed. 1298. Also, as appellee says, "they would have been deportable (8 USCA § 155) if they had never left the United States, as aliens 'sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry.'"

We conclude that the Secretary of Labor was right in ordering the petitioners deported.

Order affirmed.