# MEDVEDIEFF v. CITIES SERVICE OIL CO.

District Court, S. D. New York.

Dec. 4, 1940.

1000

Birrell & Dimmock of New York City (Lowell M. Birrell and Charles A. Van Patten, both of New York City, of counsel), for plaintiff.

Frueauff, Burns & Ruch, of New York City (Joseph M. Sullivan, of New York City, of counsel), for defendant.

HULBERT, District Judge.

■ By his motion to remand plaintiff challenges statements set forth in the removal petition and the issues thus raised must be determined by this court; the *petitioning defendant has the burden of proof.* Wilson v. Republic Iron Co., 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144; see also, McNutt v. General Motors Acceptance Corp., 298 U.S. 178, at page 189, 56 S.Ct. 780, 80 L.Ed. 1135.

Plaintiff brought a prior action in *this court* against the same defendant, a Pennsylvania corporation, and an associated Delaware corporation, and alleged in his complaint that the Pennsylvania corporation had acquired the assets and assumed the obligations and liabilities of the Delaware corporation, including a contract wherein the Delaware corporation had appointed plaintiff General Exclusive Representative in Italy and its colonies, Germany, France, Switzerland, Roumania, Czechoslovakia, Yugoslavia, Austria and Hungary, to negotiate the sale of its petroleum products in that territory, and demanded judgment for $1,000,000 for alleged breach of said contract. In that action plaintiff described himself as: "an alien, presently residing at the Hotel Waldorf Astoria, 301 Park Avenue, Borough of Manhattan, City of New York."

Thus plaintiff sought to protect his rights and pursue his remedy in this court, but he did not allege facts to establish a con-troversy "between a State, or the *Citizens* thereof, and foreign States, Citizens *or Subjects.*" (Italics for emphasis) U.S. Constitution, Article 3, Section 2, (see Judicial Code Sec. 24(1), Title 28 U.S. C.A. § 41(1), McNutt v. General Motors Acceptance Corp., supra; Alexander, et al. v. Westgate-Greenland Oil Co., et al., 9 Cir., 111 F.2d 769, and cases there cited. After service by the Pennsylvania corporation of various notices of motion addressed to the insufficiency of the complaint, plaintiff filed a notice of voluntary dismissal.

Thereupon the present action was brought in the New York Supreme Court, New York County. The allegations of the complaint are substantially the same except for omissions accountable to the elimination of the Delaware corporation.

■ Defendant's amended petition for removal alleged that plaintiff was a native of Russia who by naturalization had become, and still is, a citizen of the Kingdom of Italy. The state court was required to accept this allegation as true. Wilson v. Republic Iron Co., supra.

■ Plaintiff concedes his Russian nativity of Jewish parents; he migrated to Italy in 1914, traveling on a Russian passport, and has never since returned to Russia; on May 3, 1934 he became a naturalized *subject* of the King of Italy. If he had not already forfeited his Russian citizenship, his naturalization terminated it and made him an Italian citizen or subject.

However, plaintiff alleges that on or about September 7, 1938, a royal decree was proclaimed by the King of Italy entitled "Provisions relative to foreign Hebrews", which provided that from the date of publication thereof, September 12, 1938, "whoever was born of parents both of Hebrew race is considered a Hebrew even though he follows a religion other than the Hebrew" and "the grants of Italian citizenship however bestowed upon alien Hebrews after January 1st, 1919, are intended for all purposes hereby revoked" and all alien Hebrews "who began their residence therein after January 1, 1919, must leave the territory of the Kingdom, of Libia and of the Aegean possessions, within six months following the publication of the present decree."

In support of the motion the plaintiff submits an affidavit of Luigi Dionisi, an

Italian by birth, admitted to the practice of law at the Bar of Rome, Italy, in 1919, where he practiced his profession for a period of 8 years. For the past 12 years he has resided in the City of New York and rendered opinions on Italian law and testified in various courts in this country with respect thereto. Upon the facts disclosed by the motion papers, Mr. Dionisi states that plaintiff "for all purposes has lost the Italian citizenship previously conferred upon him."

Plaintiff also submits an affidavit of Michael J. Petchkovsky, who was admitted to the Russian Bar in St. Petersburg in 1909, and actively engaged there in the practice of law until 1917; he is now a citizen of the United States and since 1924 his principal occupation has been giving advice upon pre-Soviet and Soviet Russian law for various law firms and testifying in the courts of this country with respect thereto. In his opinion the plaintiff is not a citizen of the Union of Soviet Socialist Republics.

Defendant's only effort to meet this evidence is set forth in a replying affidavit by Joseph M. Sullivan, one of its attorneys, in which he states: "The affidavit of the plaintiff is conspicuously silent as to the fact that he remained in Italy after the decree dated September 12, 1938, canceling his Italian citizenship and did not come to the United States until March 30, 1939, arriving here on the Normandie. Plaintiff at that time was traveling on an Italian passport or permit, which is an admission by plaintiff of Italian citizenship."

Defendant cites Blumen v. Haff, 9 Cir., 78 F.2d 833.

As the plaintiff had resided in Italy *prior to January 1, 1919*, revocation of his citizenship did not forbid him the right to remain in Italy. His arrival in the United States in possession of an Italian passport does not establish his Italian citizenship. It does not appear when the passport was issued or when it expires; it is presumptively regular on its face, but there is nothing in the record to show that a naturalized Italian whose citizenship has been revoked, but still remains a lawful resident of the country, may not be entitled to a passport or permit to visit another country. If the passport was obtained by fraud that would be a matter of concern to the United States but not a ground for relief available to the defendant.

In Blumen v. Haff, supra, the appellants (aliens) were extradited to the United States from England to answer a criminal charge alleged to have been committed on a previous visit, and it was held that in the absence of proof as to the law of the country of their alleged citizenship, and of proof of the acts of the appellants in obtaining and presenting Polish passports for the purpose of entering the United States, the tender thereof was an admission that appellants were subjects of Poland and sustained the conclusion of the Secretary of Labor and her warrant of deportation, but that does not sustain the contention of the defendant here.

The defendant surprisingly asserts that the recognition of the decree of the King of Italy opens the door to irrational discrimination against aliens prohibited by the Fourteenth Amendment of the Constitution of the United States and repugnant to our principles of public policy and good government.

However revolting the acts of a sovereign state may be to a free people accustomed to our way of life, our courts must recognize the comity established by International Law and leave the solution of political questions of an international character to those upon whom the Constitution devolves that duty.

The published records containing Official State Papers are replete with expressions of the policy of the United States toward foreign nations from the inception of the Government (copious excerpts will be found in Moore on International Law) but it should suffice to quote from the opinion of Mr. Chief Justice Fuller in the case of Underhill v. Hernandez, 168 U.S. 250, at page 252, 18 S.Ct. 83, at page 84, 42 L.Ed. 456: "Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory. Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves."

Mr. Justice Holmes, in American Banana Co., v. United Fruit Co., 213 U.S. 347, at page 358, 29 S.Ct. 511, at page 513, 53 L.Ed. 826, 16 Ann.Cas. 1047, said: "The very meaning of sovereignty is that the decree of the sovereign makes law."

In Inglis v. Sailor's Snug Harbour, 3 Pet. 99, at page 162, 7 L.Ed. 617, Mr. Justice Story wrote: "Each government had a right to decide for itself who should be admitted or deemed citizens."

It might be that some distinction exists in Italy between a "citizen" and a "subject." This observation is prompted by the fact that the framers of the Constitution employed the phrase "between a State, or the *citizens* thereof, and foreign States, *citizens* or *subjects*."

It is to be remembered that the Colonials' were "subjects" until their independence was established. The word was doubtless opprobrious to them. They took the word "citizen" from the Latin "civis" which means "freeman of a city." 11 C.J. p. 772, Note 1, 14 C.J.S., Citizens, § 1. They recognized all aliens as "citizens" or "subjects."

The law of Italy is a question of fact and no proof has been offered by the defendant to establish whether there is a distinction between "citizen" and "subject." Therefore, the decisions of our own courts must be applied.

"Subject and citizen are, in a degree, convertible terms as applied to natives, and though the term citizen seems to be appropriate to republican freemen, yet we are, equally with the inhabitants of all other countries, subjects, for we are equally bound by allegiance and subjection to the government and law of the land." 2 Kent Com. 258.

"The term 'citizen,' as understood in our law, is precisely analogous to the term subject in the common law, and the change of phrase has entirely resulted from the change of government. The sovereignty has been transferred from one man to the collective body of the people—and he who before was a 'subject of the king' is now 'a citizen of the State.'" State v. Manuel, 1838, 20 N.C. 144, 4 Dev. & B. 20, 24–26, cited with approval in United States v. Wong Kim Ark, 169 U.S. 649, at page 668, 18 S.Ct. 456, at page 464, 42 L.Ed. 890, where the court said: "Nor can it be doubted that it is the inherent right of every independent nation to determine for itself, and according to its own constitution and laws, what classes of persons shall be entitled to its citizenship."

Moreover, it is well settled that a presumption exists against jurisdiction of any cause by a United States District Court and that in a diversity of citizenship case the essential element of jurisdiction must be affirmatively established. Grace v. American Central Ins. Co., 109 U.S. 278, 3 S.Ct. 207, 27 L.Ed. 932.

In the discharge of its burden, the defendant has failed to establish that the plaintiff is a citizen or subject of a foreign state, and the motion to remand must be granted.