## UNITED STATES ex rel. LING YEE SUEY et al. v. SPAR et al., Immigrant Inspectors.

### No. 332.

Circuit Court of Appeals, Second Circuit.

June 8, 1945.

882

Edward S. Friedland, of New York City, for petitioners-appellants.

John F. Ryan, Asst. U. S. Atty., of New York City (John F. X. McGohey, U. S. Atty., of New York City, on the brief), for respondents-appellees.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Petitioners are natives and citizens of China. On November 25, 1941, they ar- rived at the Port of New York from Singapore, China, as members of the crew of the British merchant vessel, "Silverash." They remained on board the vessel until April 11, 1942, under detention orders of the immigration inspectors, when the New York City police arrested them for en- gaging in a riot on board ship—apparently of serious proportions, as the return to the writ refers to "the consequent death, at the hands of the Captain, of a Chinese member of the crew." Charges against them in the New York City Magistrate's Court were subsequently withdrawn, and federal charges of conspiracy to commit assault were laid against them. These were also dismissed, and they were taken into the custody of the immigration au- thorities pursuant to warrants of arrest in deportation proceedings, issued May 12, 1942. Meanwhile the "Silverash" sailed from New York on April 27, 1942, with- out them. They were accorded hearings and were found deportable, since they were ineligible for citizenship and had entered the United States without immigration visas. But the immigration authorities re- leased them on bond on September 29, 1942, to enable them to reship on vessels of their own choice. Thereafter the Board of Immigration Appeals considered their cases, and in July, 1943, held that they must be deported to India "because of enemy occupation of China which made deporta- tion to the latter country impracticable or inconvenient." This was done pursuant to the statutory amendment of July 13, 1943, c. 230, 57 Stat. 553, 8 U.S.C.A. § 156.[1] On September 25, 1944, they were again taken into custody, the British hav- ing consented to their admission into India. Thereafter they obtained the writ of habeas corpus, from the dismissal of which they now appeal.

[1] The amendment added this sentence: "If the United States is at war and the deportation, in accordance with the pre- ceding provisions of this section, of any alien who is deportable under any law of the United States, shall be found by the Attorney General to be impracticable or inconvenient because of enemy occupation of the country whence such alien came or wherein is located the foreign port at which he embarked for the United States or because of other reasons connected with the war, such alien may, at the option of the Attorney General, be deported (a) if such alien is a citizen or subject of a coun- try whose recognized government is in ex- ile, to the country wherein is located that government in exile, if that country will permit him to enter its territory; or (b) if such alien is a citizen or subject of a country whose recognized government is not in exile, then, to a country or any political or territorial subdivision thereof which is proximate to the country of which the alien is a citizen or subject, or, with the consent of the country of which the alien is a citizen or subject, to any other country." While the Chinese Exclusion Act was repealed Dec. 17, 1943, c. 344, § 1, 57 Stat. 600, yet the Chinese quota of immigrants is limited to 105. 8 U.S.C.A. § 212a; Presidential Proclamation No. 2603, 9 F.R. 1587, 8 U.S.C.A. following section 211.

Petitioners contend that India is not a country proximate to China, because Japanese advances have made it impossible for them to return to China through India. But the statute nowhere requires that the "proximate" country must be one from which such a return is immediately possible. Obviously the determination of what is a "proximate" country must be left to the administrative agencies, whose judgment is not to be disturbed by us, unless quite unreasonable. Since India is territorially proximate to China, we find no grounds for judicial interference if the statute is valid.

Petitioners contend, however, that the statute, in permitting their deportation to a country other than that from which they came, violates the Fifth Amendment to the Constitution. We find no merit in this contention. Aliens frequently have been held deportable to the country of their nativity or citizenship, even though this was not the one from which they had last entered the United States. Lewis v. Frick, 233 U.S. 291, 34 S.Ct. 488, 58 L.Ed. 967; United States ex rel. Karamian v. Curran, 2 Cir., 16 F.2d 958; United States ex rel. Fitleberg v. McCandless, 3 Cir., 47 F.2d 683; Johnson v. Weedin, 9 Cir., 16 F.2d 105; United States ex rel. Di Battista v. Hughes, 3 Cir., 299 F. 99. And the courts often have sustained deportations to countries other than those of which the aliens were citizens or subjects. United States ex rel. Di Paola v. Reimer, 2 Cir., 102 F.2d 40; United States ex rel. Mazur v. Commissioner of Immigration, 2 Cir., 101 F.2d 707; Delany v. Moraitis, 4 Cir., 136 F.2d 129; Gorcevich v. Zurbrick, 6 Cir., 48 F.2d 1054. There is nothing in the Fifth Amendment which forbids the authorization of this practice by Congress.

Petitioners finally contend that they are not subject to the present deportation proceedings, since the warrants of arrest charged them with illegal entry into the United States. They claim they never entered illegally, but were forcibly brought into the United States by the police authorities. The cases hold that a person brought into the United States by the authorities, and then released on bond, never entered the United States. His case is like that of one who had been stopped at the border and kept there all the time. Nishimura Ekiu v. United States, 142 U.S. 651, 12 S.Ct. 336, 35 L.Ed. 1146; Kaplan v. Tod, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed.

585; United States ex rel. Pantano v. Corsi, 2 Cir., 65 F.2d 322; Ex parte Chow Chok, C.C.N.D.N.Y., 161 F. 627, affirmed 2 Cir., 163 F. 1021; cf., however, Blumen v. Haff, 9 Cir., 78 F.2d 833, certiorari denied 296 U.S. 644, 56 S.Ct. 248, 80 L.Ed. 458. But on a writ of habeas corpus we can determine only whether petitioners can be lawfully detained; and if sufficient ground for their detention is shown, they are "not to be discharged for defects in the original arrest or commitment." United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 158, 44 S.Ct. 54, 68 L.Ed. 221, quoting Nishimura Ekiu v. United States, supra, 142 U.S. 651, 662, 12 S.Ct. 336, 35 L.Ed. 1146; United States ex rel. Pantano v. Corsi, supra. The fact that petitioners never entered this country, but remained throughout in the custody of the authorities, does not now entitle them to enter the United States without quota immigration visas. 8 U.S.C.A. §§ 153, 154, clearly authorize their detention for purposes of exclusion and deportation. They are therefore not illegally detained, and the dismissal of their writ was correct. Kaplan v. Tod, supra; United States ex rel. Pantano v. Corsi, supra. On this record they show an appealing case; but so far as it is not due to the harshness of our immigration laws, it is a matter for administrative amelioration only.

Affirmed.