**UNITED STATES ex rel. PAETAU v. WATKINS, Dist. Director of Immigration, etc.**

**No. 90, Docket 20785.**

Circuit Court of Appeals, Second Circuit.

Nov. 26, 1947.

George C. Dix, of New York City (David S. Kumble, of New York City, on the brief), for relator-appellant.

Harold J. Raby, Asst. U.S. Atty., of New York City (John F. X. McGohey, U.S. Atty., of New York City, and R. A. Vielhaber, Atty., U.S. Dept. of Justice, Immigration and Naturalization Service, of New York City, on the brief), for respondent-appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This appeal again brings up the issue presented to and decided by us in U.S. ex rel. Bradley v. Watkins, 2 Cir., 163 F.2d 328, and followed in U.S. ex rel. Ludwig v. Watkins, 2 Cir., 164 F.2d 456. In those cases we have held that an alien seized by the United States elsewhere and brought here against his will for internment for security reasons as an alien enemy cannot be deported as an "immigrant"—at least not before he has been afforded an opportunity to depart voluntarily. Respondent insistently asks us either to overrule the Bradley case or to accept the differentiation relied on below that it applied only to "prisoners of war." But as just stated in the Ludwig case, we adhere to our decision and do not find basis for the suggested differentiation. We may add that we are not convinced of the existence of all the difficulties foreseen by the Government and accepted in the decision below. There would seem to be statutory authority for the eventual removal of an alien whose entrance originally involuntary becomes clearly voluntary by his continued unforced stay. Compare 8 U.S.C.A. §§ 154, 155; U.S. ex rel. Ling Yee Suey v. Spar, 2 Cir., 149 F.2d 881, 883. And if there is a hiatus or ambiguity in the statutes, it is a matter which it seems likely the legislative authorities will be willing, if not eager, to correct. At any rate, we do not think the situation justifies the harshly coercive and arbitrary governmental action disclosed in this series of cases. The Supreme Court has just now refused to consider an alien's return from Havana after shipwreck on an intercoastal voyage as an illegal entry, stressing the involuntary nature of the inducing cause and refusing to attribute to Congress a purpose to make his right to remain here

"dependent on circumstances so fortuitous and capricious as those upon which the Immigration Service has here seized." Delgadillo v. Carmichael, 68 S.Ct. 10, 12. As the Court says: "We might as well hold that if he had been kidnapped and taken to Cuba, he made a statutory 'entry' on his voluntary return. Respect for law does not thrive on captious interpretations." See also Di Pasquale v. Karnuth, 2 Cir., 158 F. 2d 878, there approved.

The facts of this case are stated in the extensive opinion below, D.C.S.D.N.Y., 73 F.Supp. 216, and need not be repeated in detail here. That opinion took a range which, in our view of the case, we need not pursue, since, as we shall indicate, we think it cannot properly be distinguished from the Bradley case. Relator was born in Guatemala, the son of a German father, and, except for one or more brief visits to Germany, lived and was engaged in business there until after our entry into World War II. He is married to a Guatemalan woman and has four minor children. The district court has held him to be a citizen of Germany under the terms of a Treaty between Guatemala and Germany of 1887, which the relator attacks as no longer in effect in Guatemala—a point we do not reach. In 1942 he was brought to this country and confined for some months in an internment camp. When given the option of remaining in custody in the United States or going to Germany, he chose the latter course, in order, as he said, to be reunited with his family. He remained in Germany with his family from August, 1942, until July, 1946, when he secured a Guatemalan passport from the Guatemalan Ambassador in London, who was also the head of the Guatemalan Relief Mission in Germany. With this he departed from Germany with his family in July, 1946, and reached Guatemala in September of that year. But while his wife and children were allowed to enter and remain in Guatemala, he was almost immediately arrested by the Guatemalan authorities, and an order was issued expelling him and ordering his deportation to Germany. He was placed on an airplane bound for the United States, with $20 in his pocket, the Guatemalan Government paying his fare. Relator asserts that the United States authorities acted jointly with the Guatemalan Government in bringing about this deportation. As the Commissioner of Immigration put it somewhat mildly in his findings: "There is some indication that the State Department approved this alien's deportation from Guatemala. This alien cannot be considered a bona fide transit under the circumstances." But the record does not show directly such joint action as to bring the case squarely within the Bradley and Ludwig cases. For present purposes we must accept it as one where the Guatemalan Government has ordered deportation of the relator back to Germany and has asked other countries to permit his passage to Germany.

 When the airplane upon which he was placed arrived at New Orleans he was taken into custody by the immigration authorities and was held in a jail in New Orleans from September 15, 1946, until May, 1947. Meanwhile various proceedings had been had in his case. The immigration authorities desired to treat him as an alien in transit and hence as never having made entry into this country, under the principle discussed in U.S. ex rel. Ling Yee Suey v. Spar, supra, and cases there cited. But this would have involved his return to Guatemala, a course to which the Guatemalan Government and, as it appears, also our State Department was opposed. At any rate, eventually the course was taken which in our view brings him within the scope of the prior precedents, namely, the proceeding for his deportation as an immigrant who had made an illegal entry. After he had exhausted all appeals, a warrant for his deportation was issued April 9, 1947, and he was brought to Ellis Island for its execution about May 1, 1947. Meanwhile he sought a writ of habeas corpus, which was issued by Judge Bondy on May 12, 1947. After return by the respondent to the writ, it was heard on August 1, 1947, by Justice Holtzoff of the District of Columbia sitting in the Southern District of New York by designation. Justice Holtzoff's first ruling was to order the warrant of deportation amended to provide for relator's deportation to Guatemala as a citizen of that country. But thereafter he granted respondent's

motion for reargument,[1] and, after further hearing, changed his holding to agree with respondent that relator was a German citizen. Accordingly the court dismissed the writ of habeas corpus and remanded the relator to the custody of the respondent, its order being made October 1, 1947. This appeal followed.

Had the relator been sent back from New Orleans while in transit we think the doctrine that he never made an entry would have covered the case. But as we have seen, the Government authorities decided not to rely upon this course, but to treat him as an immigrant who had made an illegal entry into this country. Since he was brought here against his will, we think the rationale of both the Bradley and Ludwig cases clearly applies. For reasons stated in the Bradley case the Ling Yee Suey case is not applicable. We can see no difference between the forcible bringing of an alien into this country directly by the United States authorities or such action by a foreign government with the consent of the United States. For obviously, whatever may have been the original situation, our authorities accepted it and supported the action taken when they took steps against the relator for his asserted illegal entry in order to insure his return to Germany.

Respondent further claims that relator's entry became voluntary because of his answer to a question put to him before the Board of Special Inquiry at his original hearing in New Orleans. After being informed that no arrangements had been made to permit him to pass through the territory of the United States and that he did not "possess a visa or permit to enter the United States," he was then asked as to his present intentions, "now that you have arrived in the United States." He answered, "My wish is to be with my family, to work for them and to pay for them to live." Then to the question, "Do you now apply for admission to the United States?" he made this answer: "I very fervently apply to give me the chance, as they don't accept me in Guatemala. Even if I should stay in a camp here I could work to let me stay in the United States and not send me to Germany, because it is a hell from which we have come."

To consider this as a free expression of choice validating previous actions taken against him borders on the fantastic. He was then in custody, taken from his family by force, and already speeded a considerable distance on the journey proposed for him back to Germany. And his questioner had indicated to him in very nearly so many words that his situation was desperate. Such clutching at straws to justify their actions shows a concern to secure his return to Germany which we do not understand on the part of our officials. However offensive a Nazi partisan he may have been in the past, he was now no longer being treated as an alien enemy, but rather as an immigrant making an illegal entry. This, in our conception of the law, he was not.

Relator also assigns error because the district court in a separate memorandum held it lacked authority to admit him to bail pending appeal. We think the district court overlooked the authority of Supreme Court Rule 45, par. 2, 28 U.S.C.A. following section 354, repeated in our Rule 8(b),[2] which we recognized in U.S. ex rel. Thomas v. Day, 2 Cir., 29 F.2d 485, 487, and which was directly applied in York ex rel. Davidescu v. Nicolls, 1 Cir., 159 F.2d 147. See also annotations in 63 A.L.R. 1502, 143 A.L.R. 1360, 1361. The actual decision in U.S. ex rel. Carapa v. Curran, 2 Cir., 297 F. 946, 36 A.L.R. 877, involved only the power of the appellate court on review, although some of the language of the opinion went further.

The order is reversed, with directions to sustain the writ and discharge the relator from custody of the respondent.

---

[1] Since Justice Holtzoff's designation had already expired, relator asserts that he was without power under 28 U.S.C.A. § 22 to grant this motion. But no order had then been entered, reargument was quite proper, and Justice Holtzoff was the proper judge under that statute to hear the reargument. Frad v. Kelly, 302 U.S. 312, 316, 317, 58 S.Ct. 188, 82 L. Ed. 282.

[2] Formerly our Rule 31, par. 2, which prior to Sept. 1938 was Rule 30, par. 2.