Antoine D'AGOSTINO, Appellant,

v.

Walter A. SAHLI, District Director of the United States Immigration & Naturalization Service, San Antonio, Texas, Appellee.

No. 15667.

United States Court of Appeals Fifth Circuit.

March 14, 1956.

Harold D. Putman, Putman & Putman, William O. Murray, Jr., Joseph J. Reid, Richard G. Strong, San Antonio, Tex., for appellant.

Harman Parrott, Asst. U. S. Atty., Russell B. Wine, U. S. Atty., San Antonio, Tex., for appellee.

Before BORAH, TUTTLE and JONES, Circuit Judges.

BORAH, Circuit Judge.

By his petition for a writ of habeas corpus, the appellant, Antoine D'Agostino, challenged the legality of his detention by certain officials [1] in San Antonio, Texas. Petitioner alleged that he was illegally restrained and confined in violation of the laws of the United States or treaties of the United States with foreign countries; that he was kidnapped from his residence in Mexico City by an Ambassador of the Republic of Mexico and in the custody of a United States Narcotic Agent, flown from Mexico City to San Antonio, Texas; that he was forced to appear before a Special Inquiry Officer for the United States Immigration and Naturalization Service at a hearing and was denied counsel [2] and an opportunity to subpoena witnesses at said hearing; that he had been informed that he had been charged in New York City with violating the United States narcotics laws, but that he is not the person named in the indict-

ment for the reason that he has never been in New York City; and that unless a writ of habeas corpus was granted he would be carried to the State of New York against his will.

A hearing was had on the petition and from the evidence there adduced it appears that relator was a native-born citizen of France; that he had never applied to any other country for citizenship and that he had resided in the Republic of Mexico for seven and one-half years prior to March, 1955, except for a period between March and December 31, 1949, when he was in Canada. That he was arrested in Mexico by Mexican authorities approximately ten days before his removal to the United States and the fact of his arrest was communicated to one Benjamin S. White, Jr., a representative of the United States Treasury Department in Mexico City. That thereafter White fingerprinted and identified relator as the person named in the bench warrant which had theretofore issued on an indictment returned against him in New York and advised D'Agostino of the pendency of the charge.[3] It further appears that White was later informed by the Mexican authorities that D'Agostino was to be deported,[4] whereupon White notified

1. Director of the United States Immigration and Naturalization Service, or the United States Marshal for the Western District of Texas, or the keeper of the Bexar County, Texas, Jail.

2. At the hearing below, counsel for petitioner withdrew the allegation that D'Agostino was denied the benefit of counsel.

3. D'Agostino and others were indicted on August 21, 1951, for conspiracy to violate 21 U.S.C.A. §§ 173, 174, and 26 U.S.C. §§ 2550(a), 2552, 2553(a), 2554(a) and 2555.

4. The translated text of the instructions issued by the General Ministry of Population Department of Immigration is as follows:
"General Ministry of Population
"Department of Immigration,
"Headquarters.
"Deportation of the foreigner Antonio D'Agostino Scarfoni alias Miguel Sisco.
"Citizen Chief of the Population Service,

"Central Airport, City.
"By order of the Citizen Subsecretary of the Division, the General Administration of Political and Social Investigations shall proceed with the deportation of Mr. Antonio D'Agostino Scarfoni alias Miguel Sisco, of Italian, French or North American nationality.
"You shall make available the facilities necessary for the compliance with this order and advise me of the results thereof, in order that notice may be given to the superior officer and that the corresponding documents shall be prepared. Attentively. Effective Suffrage, No Reflection.
"Mexico, D.F.
"March 14, 1955.
"The Chief of the Department
"Arcadio Ojeda Garcia."
The document bears seal dated March 14, 1955, from the Ministry of the Interior indicating the document was sent on that date to the Immigration Chief at the Central Airport in Mexico City.

his superior [5] in Washington, D. C. of D'Agostino's anticipated arrival at San Antonio and purchased with funds of the United States Government three airplane tickets for the use of himself, D'Agostino and one Orlando Delgado, an investigator in the office of Political and Social Investigations of the Republic of Mexico. On March 15, 1955, White, together with Delgado and D'Agostino who was in the custody of Delgado, boarded the plane in Mexico City and at 4:00 a. m. on the same day they arrived in San Antonio, Texas where they were met by representatives of the United States Immigration Service and a narcotics agent. D'Agostino was immediately determined to be a deportee from Mexico and *prima facie* excludable, and he was served with a notice to the effect that he was being referred to the officers of the Immigration and Naturalization Service for further hearing.

On March 16, 1955, relator was afforded a hearing before a Special Inquiry Officer, who held that he was excludable from admission to the United States, and he was immediately remanded to the custody of the Immigration Service for deportation proceedings. On the following day relator was served with the above-mentioned warrant of arrest by a Deputy United States Marshal for the Western District of Texas, and was thereafter held in custody in the county jail until his removal to the court below for hearing on his petition for a writ of habeas corpus.

D'Agostino contended at the hearing that irrespective of whether he had been deported he was brought to the United States against his will and was not an applicant for entry, and therefore that the immigration officials, having acquired no jurisdiction over him, were barred from subjecting him to exclusion proceedings under the United States immigration laws. He further contended that the custody of the marshal is likewise unlawful for the reason that the immigration officials had no lawful custody of him at the time the warrant was served.

On the other hand, government counsel argued that there was no induction of D'Agostino, but that he was legally deported under the laws of Mexico, and that anyone appearing on the borders of the United States under the laws of this country is subject to a determination of whether or not he is entitled to enter the United States; and that the proceedings held before the Special Inquiry Officer were in accordance with law.

The trial court denied the petition for a writ of habeas corpus and this appeal followed.

■ We think it plain and it is not argued to the contrary, that appellant failed to establish any violation of a treaty of the United States. We are also of opinion that appellant failed to carry the burden of showing [6] that he was forcibly kidnapped and brought into the United States as alleged. To the contrary, the evidence shows that he was regularly deported by the Mexican government, and the most that can be said for appellant's claim is that he was unwilling to be removed from Mexico.

■ Thus we come to appellant's principal contention which is that the officers in whose custody he is being held have no jurisdiction over his person. We think it clear that appellant was within the jurisdiction of the Immigration and Naturalization Service under 8 U.S.C.A. §§ 1225, 1226, and 1227, which give the immigration officials authority to examine, detain and deport, if excludable, any alien who enters the

---

On the left margin also appears a stamp dated March 15, 1955, at the Central Airport in Mexico City acknowledging receipt of the document.

5. Deputy Commissioner of Customs, C. A. Emerick was notified by telephone that

D'Agostino would arrive via plane at San Antonio, Texas, at approximately 4:00 a. m. during the morning of March 15, 1955.

6. Stidham v. United States, 8 Cir., 170 F. 2d 294.

United States. The word "entry" is defined in 8 U.S.C.A. § 1101(a) (13) as follows: "The term 'entry' means *any coming of an alien into the United States*, from a foreign port or place or from any outlying possession, *whether voluntarily or otherwise * * *.*" (Italics ours.) The word "alien" is defined in 8 U.S.C.A. § 1101(a) (3) as "any person not a citizen or national of the United States." The only authorities cited in support of appellant's argument [7] are cases which deal with the Immigration Act of 1917 and in each of these cases the Second Circuit determined only that the aliens involved were not "immigrants" within the meaning of the 1917 Act, and therefore were not subject to detention as such for the reason that they had not *departed from* any place outside the United States *destined for* the United States. These decisions under the 1917 Act do not deal with "entry" and are wholly inapposite. The Immigration and Nationality Act of 1952, however, defines the words "immigrant"[8], "alien", and "entry" and it is apparent thereunder that any person who now presents himself at a port of entry, "whether voluntarily or otherwise," is amenable to the exclusionary proceedings prescribed in the Act. Consequently, it must be held that the immigration officers had authority under 8 U.S.C.A. § 1225 to examine appellant upon his arrival at the San Antonio airport and that the hearing which was had before the Special Inquiry Officer was in conformity with the requirements set forth in Section 1226. Likewise, appellant's retention in custody by the Immigration and Naturalization Service for deportation proceedings was in accord with the provisions of 8 U.S.C.A. § 1227. Having concluded that the immigration authorities lawfully obtained jurisdiction over the person of the appellant, it follows that his custody was duly and properly transferred to the United States Marshal.

The only determination which we need make is whether appellant can be lawfully detained. If, as here, sufficient grounds for his detention are shown, he is not to be discharged even if there were defects in his original arrest or commitment. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221; United States ex rel. Ling Yee Suey v. Spar, 2 Cir., 149 F.2d 881.

Accordingly, the order of the trial court is

Affirmed.

---

7. United States ex rel. Bradley v. Watkins, 2 Cir., 163 F.2d 328; United States ex rel. Ludwig v. Watkins, 2 Cir., 164 F.2d 456; and United States ex rel. Paetau v. Watkins, 2 Cir., 164 F.2d 457.

8. 8 U.S.C.A. § 1101(a) (15).