MATTER OF GRANDI

In Exclusion Proceedings

A-17556854

*Decided by Board December 1, 1971*

(1) Applicant is estopped from contending in exclusion proceedings that he was brought to the United States against his will where, in criminal proceedings for attempted smuggling of heroin into the United States, the courts considered the same contention and found applicant came to the United States voluntarily. Applicant, in possession of a visa for entry into the United States, destined to the United States, voluntarily arriving in the United States and submitting his luggage for inspection by Customs officials, must be considered an applicant for admission.

(2) While it may be desirable for a special inquiry officer to advise an indigent alien who desires counsel about the possibility of obtaining free counsel and afford him the opportunity to explore the possibility if he so desires, the failure of the special inquiry officer to do so in the instant case did not prejudice applicant since counsel could not have altered the facts established by the criminal conviction.

(3) An adjudication of admissibility in exclusion proceedings is proper even though parole of the alien has not been terminated.

EXCLUDABLE: Act of 1952—Section 212(a)(23) [8 U.S.C. 1182(a)(23)]— Convicted of illegal receiving, concealing, and facilitating the transportation and concealment of a narcotic drug, in violation of 21 U.S.C., sections 173 and 174.

ON BEHALF OF APPLICANT:
Tracy E. Mulligan, Esquire (argued)
Stephen Bienieck, Esquire
Legal Aid Society of D.C.
666 - 11th Street, N.W.
Washington, D.C. 20001
(Brief filed)

Esther M. Kaufman, Esquire (argued)
1823 L Street, N.W., Suite 102
Washington, D.C. 20036
For Association of Immigration and
    Nationality Lawyers, amicus curiae
(Brief filed)

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

The applicant, a 57-year-old male, a native and citizen of France, appeals from the special inquiry officer's order excluding him on the ground stated in the caption. The appeal will be dismissed.

The applicant admits that he was convicted of the crime set forth in the caption. He contends that he was illegally brought to the United States, that he was never an applicant for admission to the United States, that he was denied the right to counsel, that he was not provided with an adequate interpreter, and that the Service failed to follow its regulations concerning termination of parole.

On December 13, 1967, the applicant was paroled into the United States at Rouses Point, New York pursuant to section 212(d)(5) of the Act for an indefinite period in the custody of United States Customs agents for prosecution as a narcotics smuggler (Ex. 3). An indictment filed on March 1, 1968, under 21 U.S.C. 173 and 174 charged him with unlawful acts in connection with a narcotic drug which had been imported into the United States contrary to law. The applicant entered a plea of not guilty. On June 14, 1968, he was found guilty after a trial by jury. On June 28, 1968, he was sentenced to a period of imprisonment (Ex. 2). He is now serving his sentence. The applicant's appeal was dismissed on April 7, 1970, *United States* v. *Grandi*, 424 F.2d 399 (2 Cir., 1970).[1]

The opinion of the Court of Appeals reveals the following: The applicant, a passenger on a train coming from Canada to New York, was inspected in Canada by a United States Customs officer on the train. He aroused the officer's suspicions and was told that he would be further examined upon arrival at Rouses Point, New York. The officer, who was accompanied by Canadian officers, sat across the aisle from the applicant. Before entering the United States, the train stopped at Lacolle, Quebec, where the Canadian officers left the train. At the criminal trial, the applicant claimed that at the stop he attempted to get up from his seat and leave the train, but the United States Customs officer motioned him to return to his seat. The officer, however, testified that the applicant made no attempt to rise from the seat and leave the train. Upon arrival at Rouses Point, the officer, directing the applicant to disembark and carrying some of his luggage, took him to the United States Customs Office. When an inspection of his luggage

---

[1] At the exclusion hearing, the applicant stated that the legality of his conviction was still under litigation (p. 5). He did not elaborate on the statement.

revealed that heroin was concealed in the false bottom of the suit-case, he was arrested. After his arrest, the applicant, while deny-ing any knowledge of the heroin, agreed to cooperate with Cus-toms officials in the capture of his contact man. He accompanied the Customs agents to New York City where he was to meet the contact man. At the trial, applicant contended that since he had been arrested by the United States Customs official before he en-tered the United States, and he had entered against his will, the unlawful importation of the narcotics was done under the direc-tion of the official. The trial court chose to credit the Customs officer's testimony as to what had happened at Lacolle.

The Court of Appeals found no reason to disturb the finding of the lower court. The appellate court stated that although the ap-plicant was under surveillance before he entered the United States, he was not placed in custody and arrested until after his arrival at Rouses Point.

On December 29, 1970, the Service notified the applicant in writing to appear before a special inquiry officer for a hearing in exclusion proceedings to determine whether he was entitled to enter the United States or whether he should be excluded and de-ported as one inadmissible under section 212(a)(23) of the Act. He was notified of his right to representation by counsel. The ad-vice is contained in the body of the notice and is also stamped on the margin of the notice.

The exclusion hearing was held on January 13, 1971, at the Federal institution where the applicant is serving his sentence. An interpreter in the French language was used. The interpreter stated that his knowledge of French was sufficient for communi-cation with the applicant. The applicant was told that if there was anything he did not understand, he was to advise the special inquiry officer (p. 1).

The special inquiry officer told applicant that he had the right counsel. The applicant stated he understood this but he had no money to pay for one. When asked whether he was willing to pro-ceed without a lawyer he answered, "Yes, there is nothing else I can do." (p. 3)

The hearing was short. The Service trial attorney stated that December 13, 1967, the applicant had been detrained by United States Customs agents at Rouses Point, New York be-cause they believed he was bringing narcotics into the United States, that he was then in possession of a visitor's permit, and that he was paroled in custody of the agents for prosecution (pp. 3). The applicant testified that he had attempted to enter the

United States on December 13th (p. 4), that he was paroled into the United States (p. 4), that he believed he was brought into the country illegally (p. 5), and that he used another name when he attempted to enter (p. 6).

The special inquiry officer, relying on applicant's admission that he had attempted to enter the United States and that he had been paroled (p. 2, special inquiry officer's opinion), held that the applicant was inadmissible by reason of the conviction. The special inquiry officer ordered applicant's exclusion and deportation.

Counsel and amicus curiae contend that an independent evaluation of the facts would show that applicant had been brought to the United States against his will by the United States Customs officer. Amicus curiae requests that the hearing be reopened to explore this issue. Since the courts considered applicant's claim that he had been arrested in Canada and brought to the United States against his will, and since the courts found that the applicant came to the United States voluntarily, we are bound by the finding, *Matter of Campos*, Interim Decision No. 1942 (BIA, 1969). Applicant, in possession of a visa which would permit his entry into the United States, destined to the United States, voluntarily arriving in the United States, submitting his luggage for inspection by the Customs officials, must be considered an applicant for admission. All arriving aliens must be examined by an immigration officer, 8 U.S.C. 1225. On the basis of these facts, we must conclude there was an actual or at the least an implicit application for admission which is sufficient to warrant an adjudication of admissibility in exclusion proceedings. Since the special inquiry officer had jurisdiction of the application, and since the record established the applicant is clearly inadmissible, we see no reason to change the special inquiry officer's decision.

*Title* v. *United States*, 322 F.2d 21 (9 Cir., 1963), is not inconsistent with our reliance on the binding effect of the courts' findings in the criminal case. In *Title, supra*, the Service sought to deport Title on the ground that he had been a member of an organization which sought the overthrow of the Government by force and violence. To establish the organization was one seeking the overthrow of the Government by force and violence, the Service relied upon the fact that Title had been denaturalized in a judicial proceeding in which his membership in the organization and its nature had been established. The court reviewing the deportation order held that the Service could not rely on the judicial determination in the denaturalization case, but had to prove

in the deportation case that the organization was one which sought the overthrow of the Government by force and violence. There are several important distinctions: *Title* was a deportation case—one where the burden of proof was on the Service; the case before us is an exclusion case—one where the burden of establishing admissibility is on the applicant for admission. Title did not present evidence in his denaturalization case. The applicant did. *Title* was bottomed on the specific wording of a statutory provision (section 242(b) of the Act) which is not involved in the instant case. Finally, as the court pointed out, after the denaturalization, the Supreme Court held the quality of membership in the organization was an important factor—this aspect had not previously been deemed of importance and the Service had not shown the existence of this factor in the denaturalization case.

Counsel's contention that applicant's presence in the United States is in violation of the diplomatic protocols of the United States and Canada and Article 2 of the United Nations Charter because he was brought here by force need not be discussed in view of the position we have stated in the previous paragraphs.[2]

Amicus curiae contends that the applicant was denied his right to counsel at the exclusion hearing. She states that the special inquiry officer, having knowledge of the applicant's desire to be represented and his financial inability to pay for counsel, should have advised him that it might be possible to obtain representation even though he had no funds and should have given applicant time for that purpose. She points out that there was no pressing need for an immediate hearing since the applicant was serving a sentence with many years to go. She cites *Ka Cheung Ip v. INS*, unreported (1 Cir., No. 7802, February 18, 1971). She states that if applicant had been represented, the involuntariness of his presence in the United States would have been established at the hearing. We agree with counsel that the special inquiry officer could well have informed the applicant about the possibility of obtaining free counsel and could well have given him the opportunity to explore the possibility if he so desired. However, we do not find that the special inquiry officer's failure prejudiced the

---

[2] A person who presents himself at a port of entry, "whether voluntarily or otherwise" is amenable to the exclusionary proceedings prescribed in the Act, *D'Agostino v. Sahli*, 230 F.2d 668, 671 (5 Cir., 1956). Once an application for admission is made, the applicant cannot withdraw the application as a matter of right. Administrative authorities may permit a withdrawal as a discretionary matter, *Matter of Vargas-Molina*, Interim Decision No. 2069 BIA, 1971).

alien because we do not see how counsel could have altered the results here. The applicant's conviction is a fact. It exists. The voluntariness of applicant's application for admission, as we have pointed out, is an issue foreclosed by decisions in the criminal matter. Moreover, applicant's general level of understanding is such that he clearly understood the purpose of the exclusion hearing and what was happening at it. Finally, there is no requirement that the Service provide counsel for the applicant at Government expense, *Aalund* v. *Marshall*, 323 F. Supp. 1380 (E.D. Tex., 1971). In view of these factors, we do not think that *Ka Cheung Ip, supra*, requires a reopened hearing at which applicant will be represented.

Amicus curiae contends that the applicant was denied his right to effectively present evidence on his own behalf because of the inadequacy of the interpreter. We have carefully examined the record in light of the contention. The record on a whole reveals that the applicant's answers were responsive, that they were specific, and that they consisted of more than categorical answers. The applicant has furnished no specific instance of a misunderstanding of a question or of an answer improperly set forth in the record.

Amicus curiae contends that this exclusion proceedings is premature because applicant's parole was not terminated in accordance with the regulations. She points out that the applicant was paroled into the United States, that 8 CFR 212.5(a) requires that parole shall be terminated upon written notice to the alien when the purpose for which parole was authorized has been accomplished, and that there is no showing that the parole was so terminated. She contends that the parole status still continues and it is therefore premature to hold an exclusion hearing.

Even if applicant's parole has not been terminated, an adjudication of his admissibility in exclusion proceedings is proper. Parole is merely an alternative to detention at the border. It "is simply a device through which needless confinement is avoided while administrative proceedings are conducted," *Leng May Ma* v. *Barber*, 357 U.S. 185, 190 (1958). Parole bestows no additional rights upon an alien, *Matter of Dabiran*, Interim Decision No. 2051 (BIA, 1970). A person detained at the border can be given an exclusion hearing. A person who has been ordered excluded may be paroled while his appeal is being considered. We see no reason why a parolee cannot be given an exclusion hearing. In the instant case there is good reason to continue applicant in his status as a parolee. He is serving a prison sentence. He will be in

the United States for some time to come whatever the outcome of the exclusion case. The status of a parolee is the only one legally available.[3]

**ORDER:** The appeal is dismissed.

---

[3] *Service* v. *Dulles*, 354 U.S. 363 (1957), and *Accardi* v. *Shaughnessy*, 347 U.S. 260 (1954), cited by counsel on the necessity of an administrative agency following its own regulations are inapposite. In the cited cases, the alleged deviations from the regulations were prejudicial. This is not the case here.