MATTER OF PEREZ-VALLE

In Deportation Proceedings

A-19981512

Decided by Board November 19, 1980

(1) Where the judgment in a criminal case is an acquittal, rather than a conviction, collateral estoppel is applicable in a subsequent criminal case as to matters necessarily determined in reaching the acquittal. *Ashe v. Swenson*, 397 U.S. 436 (1970).

(2) Collateral estoppel is not applied with respect to an acquittal to bar a subsequent civil suit because of the differences between civil and criminal law and procedure. *Helvering v. Mitchell*, 303 U.S. 391 (1938).

(3) Where a defendant has been acquitted on a criminal charge, one of the essential elements of which was alienage, the doctrine of collateral estoppel does not preclude litigation of the question of his alienage in a subsequent deportation proceeding.

CHARGE:
Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entry without inspection

ON BEHALF OF RESPONDENT:
Raymond Campos, Esquire
Vivero & Campos
304 South Broadway, Suite 310
Los Angeles, California 90013

ON BEHALF OF SERVICE:
Jane Gersbacher
Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, and Maguire, Board Members

In a decision dated August 14, 1978, an immigration judge found the respondent deportable as charged and granted him voluntary departure. The respondent has appealed. The appeal will be dismissed.

The respondent is 35 years old, allegedly a native and citizen of Mexico. The record reflects that on April 15, 1966, he was granted voluntary return to Mexico. On December 8, 1970, in the United States District Court for the Southern District of California, the respondent was found guilty in accordance with his pleas of guilty on two counts of making a false claim to United States citizenship in violation of 18 U.S.C. 911. He was sentenced to confinement for 3 months and 10 months, respectively, with confinement in excess of 3 months suspended. In addition, he was placed on probation for 5 years. On June 19, 1972, the respondent was convicted in the United States District Court

for the Southern District of California of conspiracy and transportation of illegal aliens in violation of 18 U.S.C. 317 and 1324 (four counts). He was sentenced to 3 years confinement and placed on probation for 3 years. He last entered the United States from Mexico on March 7, 1974, again claiming to be a citizen of the United States. On September 28, 1977, the United States District Court for the Central District of California acquitted him on a charge that he was an alien found in the United States after deportation in violation of 8 U.S.C. 1326. On February 2, 1978, an Order to Show Cause was issued charging the respondent with deportability for having entered the United States without inspection. At his hearing, the respondent admitted that he last entered the United States at San Ysidro, California, claiming to be a United States citizen. Deportability in this case rests upon the determination whether the respondent is an alien.

On appeal, the respondent contends that his September 28, 1974, acquittal on the charge of being an alien found in the United States after deportation is res judicata to the Government on the issue of alienage. The respondent's argument is in essence that the judge acquitted him because he is a United States citizen and, therefore, the Government is collaterally estopped by the former acquittal from re-litigating the issue of alienage.[1] We find the respondent's contention to be without merit.

It is well settled that the facts necessary for a criminal conviction and judgment are deemed conclusive in any later civil suit between the same parties or their privys. *Emich Motors Corporation* v. *General Motors Corporation,* 340 U.S. 558 (1951); *Local 167, I.B.T.,* etc. v. *United States,* 291 U.S. 293 (1934); *United States* v. *Kaplan,* 267 F.2d 114 (2 Cir. 1959). A determination of alienage in connection with a criminal conviction has been held conclusive in a subsequent suit for revocation of naturalization. *United States* v. *Accardo,* 113 F.Supp. 783 (D.C.N.J. 1953), *aff'd.,* 208 F.2d 632 (3 Cir. 1953).

The Board has also applied estoppel to preclude re-litigation of issues decided by a criminal conviction. Thus, a respondent convicted for illegal entry has been collaterally estopped from re-litigating the issue of illegal entry in deportation proceedings. *Matter of Rina,* 15 I&N Dec. 346 (BIA 1975). A respondent convicted for fraudulently procuring a visa has been estopped from establishing that he had not

---

[1] The term "res judicata" has been given many different meanings. Current usage gives it a broad meaning which covers all the various ways in which a judgment in one action has a binding effect in another. This includes the effect of the former judgment as a bar or merger where the latter action proceeds on all or part of the very claim which was the subject of the former. It also includes what has come to be known as collateral estoppel—the effect of a former judgment in a later action based upon a different claim or demand. *See* F. James, *Civil Procedure,* section 11.9 (1965).

obtained the visa by fraud. *Matter of Z—*, 5 I&N Dec. 708 (BIA 1954). A respondent convicted for attempting smuggling of heroin into the United States contended in exclusion proceedings that he was brought to the United States against his will. The Board found that this contention had been presented to and rejected by the criminal court and held that the respondent was estopped from relitigating that issue in exclusion proceedings. *Matter of Grandi*, 13 I&N Dec. 798 (BIA 1971).

Where the judgment in a criminal case is an acquittal, rather than a conviction, collateral estoppel is applicable in a subsequent criminal case as to matters necessarily determined in reaching the acquittal. *Ashe v. Swenson*, 397 U.S. 436 (1970). However, an acquittal does not bar a subsequent civil action remedial in its nature based upon the same facts alleged in the criminal case.[2] Thus, one acquitted of criminal tax evasion may nonetheless be found to have evaded taxes so as to be subject to the 50 percent civil tax fraud penalty. *Helvering v. Mitchell*, 303 U.S. 391 (1938). A forfeiture of imported merchandise not included in a declaration of entry pursuant to the tariff provisions of the United States Code is not barred by a prior acquittal on a charge of having smuggled that merchandise into the United States. *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232 (1972). Likewise, the doctrine of collateral estoppel does not prohibit a parole board from finding a petitioner guilty of a violation of parole following an acquittal on the same underlying charge in a criminal trial. *See Standlee v. Rhay*, 557 F.2d 1303, n.2 (9 Cir. 1977). This rule is applicable in deportation cases. The Supreme Court has held that an acquittal on a criminal charge alleging that the defendant procured and brought a woman to the United States for immoral purposes may nonetheless be found deportable based on the acts underlying that charge. *See Lewis v. Frick*, 233 U.S. 291 (1914).[3]

Collateral estoppel is not applied with respect to an acquittal to bar a subsequent civil suit because of the differences between civil and criminal law and procedure. The following quotation from *Helvering v. Mitchell*, 303 U.S. 391 (1938), is instructive:

> The difference in degree of the burden of proof in criminal and civil proceedings precludes application of res judicata. The acquittal was "merely ... an adjudication that the proof was not sufficient to overcome all reasonable doubt of the accused." *Lewis v. Frick*, 233 U.S. 291 (1914) .... It did not determine that *Mitchell* had not

---

[2] If a subsequent civil action is punitive in nature, it may be barred. *See Coffey v. United States*, 116 U.S. 436 (1886); compare *Coffey* with *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232 (1972); *see also Standlee v. Rhay*, 557 F.2d 1303, n.2 (9 Cir. 1977).

[3] Although the standard of evidence necessary to establish deportability has changed since 1914 (*see Woodby v. INS*, 385 U.S. 276 (1966), the court's reasoning in *Lewis v. Frick* is equally applicable today.

willfully attempted to evade the tax. That acquittal on a criminal charge is not a bar to a civil action by the Government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based has long been settled. . . . Where the objective of the subsequent action likewise is punishment, the acquittal is a bar, because to entertain the second proceeding for punishment would subject the defendant to double jeopardy; and double jeopardy is precluded by the Fifth Amendment whether the verdict was an acquittal or a conviction. . . .

*Helvering* v. *Mitchell, supra,* at 397.

The Supreme Court has recently set forth other sound reasons for not applying collateral estoppel to preclude re-litigation of issues covered by a prior acquittal. In *Standefer* v. *United States,* 100 S. Ct. 1999 (1980), the petitioner had been convicted on nine counts of an indictment, including five counts charging him with aiding and abetting a public official in accepting unauthorized compensation. Prior to the petitioner's trial, the Internal Revenue Service agent whom he had allegedly aided and abetted was acquitted of all charges alleging that he had received unlawful compensation. The Court held that the government was not barred by the doctrine of nonmutual collateral estoppel from re-litigating the issue of whether the agent had accepted unlawful compensation despite his acquittal on those charges. The Court noted that in a criminal case the government is often without the kind of "full and fair opportunity to litigate" that is a prerequisite to estoppel. The Court observed that the prosecution's rights of discovery are limited by rules of court and the accused's constitutional privileges; the prosecution cannot be granted a directed verdict or a judgment notwithstanding the verdict no matter how clear the evidence of guilt, *compare* Federal Rule of Civil Procedure 50; it cannot secure a new trial on the ground that an acquittal was plainly contrary to the weight of the evidence, *compare* Federal Rule of Civil Procedure 59; and it cannot appeal from an acquittal, *see United States* v. *Ball,* 163 U.S. 662 (1896). The Court also commented that the application of nonmutual estoppel in criminal cases is also complicated by the existence of rules of evidence and exclusion which are unique to our criminal law.

While in *Standefer* the Court was addressing nonmutual estoppel in the context of a criminal case, the considerations discussed above are equally applicable where the subsequent case is a civil one, such as the instant deportation proceedings. The Court's arguments are particularly applicable in this case because the record does not contain a copy of the transcript of the trial at which the judge merely granted the respondent's motion for a directed verdict of acquittal.

Thus, we conclude that the respondent's acquittal on the charge of being an alien found in the United States after deportation in violation of 18 U.S.C. 1326 does not preclude litigation of the respondent's

nationality status in deportation proceedings. *Cf. Lewis v. Frick*, *supra*.

The respondent's December 8, 1970, conviction for making false claims to United States citizenship in violation of 18 U.S.C. 911 would ordinarily estop him from claiming United States citizenship from birth. *See United States v. Rangel-Perez*, 179 F.Supp. 619 (S.D. Ca. 1959); *Pena-Cabanillas v. United States*, 394 F.2d 785 (9 Cir. 1968); *United States v. Bejar-Matrecios*, 618 F.2d 81 (9 Cir. 1980). However, in view of the respondent's subsequent acquittal purportedly on the basis of a finding of citizenship, we think it inappropriate to dispose of this case by applying collateral estoppel. We will instead examine the evidence of alienage, and thus deportability, to see whether it is clear, convincing, and unequivocal. We find that it is. The evidence of alienage is as follows:

1) The respondent was granted voluntary return to Mexico in 1966.
2) The respondent's birth certificate reflects that "... citizen Cirillo Perez, single, Mexican, farmer, 31 (thirty-one) years of age. Native of Zepatillan, Jallisco and *resident of Jequizquite, of this area* (emphasis added), and said that on the 2nd day of October of the current year (1944) at about 4 o'clock in the morning, in his home, without number of said ranch, was born a live male child (the respondent)....
3) On December 8, 1970, the respondent was convicted of making false claims to United States citizenship.
4) In an affidavit dated January 24, 1974, the respondent said "I am a citizen and resident of Mexico."
5) In a deportation hearing on February 31, 1974, the respondent testified under oath that he was not a citizen or national of the United States but that he was a citizen of Mexico.

Contradicting this evidence of alienage is the respondent's testimony that he is a United States citizen, a statement by his counsel that the respondent's baptismal certificate will support the respondent's testimony, and a statement by counsel that the respondent's parents testified at his criminal trial that the respondent was born in the United States and taken to Mexico where his birth was recorded.

In a deportation case the Government must prove deportability by clear, convincing, and unequivocal evidence. However, when the Government establishes a prima facie case of deportability, the burden shifts to the respondent to go forward with the evidence. In this case, the Government has presented abundant evidence of alienage while the respondent has presented only his testimony. Counsel's brief and comments to the immigration judge are not evidence.

The respondent has been given ample opportunity to present evidence in his defense. The Order to Show Cause was issued on February 2, 1978. The hearing was first convened on May 18 and the Government presented its evidence of alienage. Counsel for the respondent asked for a continuance for the purpose of obtaining a

transcript of the record of the respondent's acquittal. The continuance was granted. The hearing was resumed on June 29. The respondent appeared without counsel and the immigration judge continued the case. On August 10, 1978, the respondent appeared again without counsel. The immigration judge gave the respondent a legal aid referral list and again continued the case until August 14, 1978. On that date the respondent appeared with present counsel, Mr. Campos. Counsel advised the immigration judge that he had requested a copy of the transcript of the respondent's acquittal but that he did not know when it would be ready. He also offered a copy of the respondent's baptismal certificate. However, the immigration judge refused to admit the certificate into evidence because it was not properly certified or attested. *See* 8 C.F.R. 287.6. The immigration judge adjourned the hearing until September 27 to give counsel an opportunity to obtain the necessary certification and/or the transcript. On October 25, 1978, the hearing resumed. The respondent appeared again without counsel. He advised the immigration judge that he did not have the money to purchase a transcript of his prior hearing. The immigration judge then proceeded to a decision.

Thus, the respondent was given four continuances over a 5-month period, two of which were granted for the specific purpose of allowing him an opportunity to obtain evidence of the place of his birth and a copy of the transcript of the record of his acquittal. No such evidence was produced. Counsel for the respondent has filed a brief on appeal in which he referred to the evidence, but he did not attach it. It has been 2 years since the immigration judge's decision, and the respondent still has not offered that evidence.

Accordingly, the appeal will be dismissed. However, if the respondent produces the evidence discussed above in a form which is admissible in deportation proceedings, we will reopen the proceedings to consider his evidence.

ORDER: The appeal is dismissed.

FURTHER ORDER: The respondent is permitted to depart from the United States voluntarily within 30 days from the date of this order; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.